J-S40037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DWAYNE SPURELL, | : | |
| | : | |
| Appellant | : | No. 2477 EDA 2015 |

Appeal from the Judgment of Sentence June 26, 2013
in the Court of Common Pleas of Delaware County,
Criminal Division, No(s): CP-23-CR-0004494-2012

BEFORE: BOWES, MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED JUNE 10, 2016**

Dwayne Spurell ("Spurell") appeals from the judgment of sentence imposed after a jury found him guilty of five counts of robbery, and one count of criminal conspiracy.[1] We affirm in part, and vacate and remand in part.

The trial court set forth in its Opinion the procedural history underlying this appeal, which we incorporate herein by reference. **See** Trial Court Opinion, 12/15/15, at 1-8.[2]

On appeal, Spurell presents the following issues for our review:

1. Did the trial court abuse its discretion and/or commit an error of law by denying [Spurell's April 15, 2013] [M]otion for dismissal for [the Commonwealth's]

---

[1] **See** 18 Pa.C.S.A. §§ 3701, 903(a).

[2] Though it appears that Spurell filed his court-ordered Pa.R.A.P. 1925(b) Concise Statement two days late, we, like the trial court, will overlook this defect, for the reasons set forth in the trial court's Opinion. **See** Trial Court Opinion, 12/15/15, at 9.

violation of [Pa.R.Crim.P.] 600 [(hereinafter, "Rule 600 Motion")], where charges were filed against him [on] May 13, 2005[,] and he was not brought to trial until April 16, 2013, notwithstanding that [Spurell] was incarcerated and under county supervision, with his whereabouts known by the Commonwealth, from 2008 through 2011?

2. Did the trial court abuse its discretion and/or commit an error of law by allowing the matter to proceed to trial, where charges were filed against [Spurell on] May 13, 2005[,] and he was not brought to trial until April 16, 2013, notwithstanding that [Spurell] was incarcerated and under county supervision, with his whereabouts known by the Commonwealth, from 2008 through 2011?

3. Did the trial court abuse its discretion and/or commit an error of law by failing to timely rule on [Spurell's June 27, 2013] Post[-]Sentence Motion alleging a violation of his Rule 600 speedy trial rights [(hereinafter, "Rule 600 Post-Sentence Motion")], and therefore denying the [M]otion as a matter of law without reaching a decision on the merits, where charges were filed against him [on] May 13, 2005[,] and he was not brought to trial until April 16, 2013, notwithstanding that [Spurell] was incarcerated and under county supervision, with his whereabouts known by the Commonwealth, from 2008 through 2011[?]

4. [] Is [Spurell] entitled to remand and resentencing where his sentence included [a] mandatory minimum period of incarceration pursuant to 42 Pa.C.S.A. § 9712[,] which has since been deemed constitutionally invalid?

Brief for Appellant at 3-4.

We will address Spurell's first two issues together, as they both challenge the trial court's purported abuse of discretion in failing to rule that the Commonwealth committed a Rule 600 violation. We review such claims according to the following principles:

- 2 -

In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but[,] if in reaching a conclusion[,] the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Thompson***, 93 A.3d 478, 486-87 (Pa. Super. 2014)

(citations, brackets and ellipses omitted).

Spurell argues that the trial court abused its discretion by denying his Rule 600 Motion because the evidence established that the Commonwealth violated his speedy trial rights by failing to exercise due diligence in locating him and bringing his case to trial. *See* Brief for Appellant at 7, 11-14. Spurell points out that he was not brought to trial until April 2013, nearly eight years after the charges against him were filed. *Id.* at 7. Additionally, Spurell contends that

> on at least three [] occasions in 2008, 2009, and 2011[, he] was apprehended and/or brought to court and incarcerated in Philadelphia County and Pennsylvania state correctional institutions. At each of these arrests, the Commonwealth should and would have been notified that the suspect had been apprehended in another jurisdiction, at which point the Commonwealth would lodge its detainer and proceed with prosecution.[3] … [A]t a very minimum, the Commonwealth should have been on actual notice of [Spurell's] apprehension in July of 2008 by the Philadelphia Police Department, and the prosecution against him should have proceeded at that point.

*Id.* (footnote added). In light of the foregoing, Spurell argues, it cannot be said that the police exercised due diligence in locating him and prosecuting the instant case against him. *Id.* at 12-13.

The trial court's Opinion aptly set forth the relevant law concerning Rule 600, addressed Spurell's claims in detail, and thoroughly discussed the

---

[3] Specifically, Spurell asserts that concerning each of the three above-mentioned arrests, authorities should have entered his information into the National Crime Information Center ("NCIC") database, as "[p]roper protocol would require that the suspect be ran through the NCIC database each time he was apprehended to check for outstanding warrants, and the appropriate agency be notified if a warrant or detainer existed." Brief for Appellant at 12.

unique circumstances concerning the delay in bringing Spurell to trial. *See* Trial Court Opinion, 12/15/15, at 10-28. The trial court rejected Spurell's claims, determining that no Rule 600 violation had occurred, as (1) the unusual events that caused the delay were outside of the Commonwealth's control; and (2) the police acted with due diligence, and exercised reasonable efforts to locate Spurell's whereabouts, despite unforeseeable breakdowns that had occurred in this case following his commitments beginning in 2008. *See id.* The trial court's exhaustive, sound analysis and determination is supported by the law and the record, and we therefore affirm on this basis in rejecting Spurell's first two issues. *See id.*

In his third issue, Spurell contends that the trial court erred by failing to rule on his timely-filed Rule 600 Post-Sentence Motion. Brief for Appellant at 15. Spurell points out that "[n]o decision was ever reached on the merits of the [M]otion; rather[,] it was apparently lost or misfiled for over two [] years and ultimately denied as a matter of law." *Id.*

The trial court addressed this claim in its Opinion, explained the breakdown in the court's procedures that caused the court to not be alerted as to the filing of the Rule 600 Post-Sentence Motion, and determined that Spurell's claim does not entitle him to relief. *See* Trial Court Opinion, 12/15/15, at 56-61. As the trial court's thorough analysis is sound and

supported by the record, we affirm on this basis as to Spurell's third issue.

**See id.**[4]

In his final issue, Spurell argues that the mandatory sentences imposed on him under 42 Pa.C.S.A. § 9712 (sentences for offenses committed with firearms)[5] are illegal pursuant to **Alleyne v. United States**, 133 S. Ct. 2151 (2013), and its progeny. Brief for Appellant at 15;[6] **see also Alleyne**, 133 S. Ct. at 2163 (holding that "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt).

Initially, we observe that although Spurell did not raise this claim in his Pa.R.A.P. 1925(b) Concise Statement, we may address it *sua sponte* because it implicates the legality of his sentence. **See Commonwealth v. Newman**, 99 A.3d 86, 90 (Pa. Super. 2014) (*en banc*) (stating that "a

---

[4] As an addendum, we observe that the trial court held a hearing on Spurell's Rule 600 Motion prior to trial, and correctly denied the Motion. Accordingly, we, like the trial court, are puzzled by the relief that Spurell seeks on this claim. **See**, **e.g.**, Brief for Appellant at 15 (asserting that "[b]ecause a decision was never rendered on the merits of [Spurell's Rule 600] Post Sentence Motion, the matter should be remanded to the trial court for a hearing on the same."); **see also** Trial Court Opinion, 12/15/15, at 57.

[5] Relevantly, 42 Pa.C.S.A. § 9712 provides that "[p]rovisions of this section shall not be an element of the crime[,]" and that in order for the five-year mandatory minimum sentence under subsection 9712(a) to apply, the court must determine at sentencing, *by a preponderance of the evidence*, that the requirements were met. **Id.** § 9712(b).

[6] The Commonwealth and trial court agree that Spurell's mandatory minimum sentences are illegal. **See** Brief for the Commonwealth at 14-15; Trial Court Opinion, 11/18/15, at 4 n.21.

challenge to a sentence premised upon **Alleyne** [] implicates the legality of the sentence and cannot be waived on appeal."); **Commonwealth v. Vargas**, 108 A.3d 858, 876 n.13 (Pa. Super. 2014) (stating that "legality of sentence questions are not waivable and may be raised *sua sponte* by this Court.") (citation and brackets omitted).

Spurell is correct that **Alleyne** rendered section 9712 constitutionally infirm in its entirety because the statute allows the sentencing court to determine, by only a preponderance of the evidence, whether the mandatory minimum sentence applies. **See Commonwealth v. Valentine**, 101 A.3d 801, 811-12 (Pa. Super. 2014) (holding that section 9712 is unconstitutional as a whole). Accordingly, the mandatory minimum sentences that the trial court imposed pursuant to section 9712 are illegal and must be vacated. Because our decision upsets the trial court's overall sentencing scheme, we vacate Spurell's judgment of sentence in its entirety, and remand for resentencing, without consideration of 42 Pa.C.S.A. § 9712. **See Commonwealth v. Ferguson**, 107 A.3d 206, 213-14, 216 (Pa. Super. 2015) (vacating entire sentence pursuant to **Alleyne** and remanding for resentencing on all counts, where the sentence encompassed both counts subject to mandatory minimum sentencing provisions and counts not subject to mandatory minimum sentencing provisions).

Spurell's convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

J-S40037-16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/10/2016</u>

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA     :     NO. 4494-12

                         :

                         :

             v.                  :

DWAYNE SPURELL                       :

A. Sheldon Kovach, Esquire – Deputy District Attorney for the Commonwealth
Joseph A. Malley, III, Esquire – Attorney for Dwayne Spurell

## OPINION

**Kelly, J.**                                          **Date: December 15, 2015**

### I. Case History

A criminal complaint was filed on May 13, 2005, by Sergeant Jeffrey Brown, Aston Township Police Department, charging Dwayne Spurell (hereinafter referred to as "Defendant" or "Spurell") with, *inter alia*: Robbery (six (6) counts)[1] and Criminal Conspiracy to commit Robbery (six (6) counts).[2] On that same day (May 13, 2005), the Magisterial District Court issued for the Defendant a resulting arrest warrant. *See* Arrest Warrant, No. CR 147-05 – Magisterial District Court 32-2-38, dated May 13, 2005.

A preliminary hearing was held on July 11, 2012,[3] before the Magisterial District Court. After the Commonwealth's presentation of evidence, the presiding Magisterial District Judge held the Defendant for trial court purposes as to all charged offenses.

Defendant Spurell was formally arraigned before the trial court on August 9, 2012, at which time the Office of the Delaware County District Attorney lodged against him a Criminal

---

[1] 18 Pa.C.S. §3701.
[2] 18 Pa.C.S. §903(3701).

[3] The delay between the lodging of the criminal complaint, the arrest warrant's issuance, and the Defendant's preliminary hearing is discussed *infra*.

Information averring, *inter alia*, the following: Count 1 - Criminal Conspiracy to commit Robbery;[4] Count 8 - Robbery;[5] Count 9 - Robbery;[6] Count 10 - Robbery;[7] Count 11 - Robbery;[8] and Count 12 - Robbery.[9]

On April 15, 2013, the Defendant's attorney[10] lodged a Motion for Dismissal Pursuant to Violation of Rule 600. *See* Motion for Dismissal Pursuant to Violation of Rule 600. A hearing was held relevant to this motion on that same date (April 15, 2013) and ended the next day (April 16, 2013). N.T. 4/15/13. N.T. 4/16/13. The court on April 16, 2013, denied Defendant Spurell's Rule 600 dismissal claim. N.T. 4/16/13, p. 12.

A jury trial[11] commenced on April 16, 2013, continued over the next two (2) days and concluded on April 18, 2013.[12] N.T. 4/16/13. N.T. 4/17/13. N.T. 4/18/13. The jury found the Defendant guilty as to all prosecuted charges: Count 1 – Criminal Conspiracy to commit

---

[4] *Id.*
[5] 18 Pa.C.S. §3701.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

[10] Defendant Spurell was initially represented by the Delaware County Public Defender's Office, but on December 19, 2012, that office lodged a Petition to Appoint Counsel after concluding a conflict of interest existed in its stewardship of the Defendant as the Public Defender's Office was also representing one (1) of his co-defendants for charges stemming from the same incident. *See* Petition to Appoint Counsel. By order of December 21, 2012, the court designated Joseph A. Malley, III, Esquire to represent Defendant Spurell. *See* Order Appointing Counsel.

[11] With the court's denial of Defendant Spurell's motion, defense counsel advised the case would proceed to a nonjury trial. N.T. 4/16/13, pp. 12-13. After the court directed the Defendant's lawyer to colloquy Defendant Spurell about his decision to waive his right to a jury trial, it conducted a similar of-record inquiry. N.T. 4/16/13, pp. 13-25. Following the court's colloquy, a recess was taken and on resuming the above-captioned matter Defendant Spurell requested to withdraw his nonjury trial application and opted to exercise his right to trial by jury. Accordingly, the case was tried before a jury. N.T. 4/16/13, pp. 24-26.

[12] Prior to the commencement of the trial's evidentiary presentation, without objection, the Commonwealth, of-record, withdrew the balance of its past filed Criminal Information proceeding only on the following: Count 1 - Criminal Conspiracy to commit Robbery, 18 Pa.C.S. §903(3701); Count 8 – Robbery, 18 Pa.C.S. §3701; Count 9 - Robbery, *Id.*; Count 10 - Robbery, *Id.*; Count 11 - Robbery, *Id.*; Count 12 - Robbery, *Id.*; and Count 28 – Firearms Not to be Carried Without a License, 18 Pa.C.S. §6106. N.T. 4/15/13 (Robing Room Conference), pp. 3-4. During the course of trial, the prosecution as well withdrew, absent opposition, Count 28 - Firearms Not to be Carried Without a License, *Id.* N.T. 4/17/13 (Robing Room Conference), p. 157.

Robbery;[13] and Counts 8 through 12 – Robbery.[14] *See* Verdict. The court immediately, subsequent to the verdict's announcement and recording, directed a presentence investigation report was to be completed. *See* Request for Presentence Investigation Report. N.T. 4/18/13, pp. 74-81.

Although still represented of-record by his trial lawyer, Mr. Malley, and yet unsentenced, the Defendant on or about April 24, 2013, lodged *pro se* with the Superior Court a Notice of Appeal. *See Pro Se* Appeal Notice. *See also* Superior Court No. 1359 EDA 2013.

Defense counsel, on or about April 25, 2013, filed a pleading entitled a Motion to Challenge the Verdict Against the Weight of the Evidence and Dismissal Pursuant to Commonwealth's Failure to Comply with Rule 600, although a sentence had not then been imposed. *See* Defendant's Motion dated April 25, 2013. By praecipe lodged of-record on or about April 30, 2013, the Defendant's attorney withdrew this filing. *See* Praecipe to Withdraw.

Resulting from the Defendant's *pro se* appeal notice (April 24, 2013), the Superior Court via an order of June 11, 2013, quashed as interlocutory this appeal. *See* Superior Court No. 1359 EDA 2013, Order dated June 11, 2013.

On June 24, 2013, the Commonwealth lodged its Notice of Intention to Seek the Imposition of the Mandatory Minimum Sentence Pursuant to 42 Pa.C.S.A. § 9712. *See* Commonwealth's Notice.

A sentencing hearing was held on June 26, 2013, before this court. NT. 6/26/13. Defendant Spurell was sentenced by this court consistent with his Pennsylvania Sentencing Guidelines' relevant standard ranges as follows: Count 1 (Criminal Conspiracy to commit

---

[13] 18 Pa.C.S. §903(3701).
[14] *Id.*

3

Robbery)[15] – a term of five (5) to ten (10) years incarceration to be served at a state penal facility; Count 8 (Robbery)[16] – a period of five (5) to ten (10) years imprisonment to be served at a state correctional institution; Count 9 (Robbery)[17] – a five (5) to ten (10) year term of incarceration to be served at a state prison; Count 10 (Robbery)[18] – a period of five (5) to ten (10) years imprisonment to be served at a state correctional institution; Count 11 (Robbery)[19] – a five (5) to ten (10) year term of incarceration to be served at a state penal facility; and Count 12 (Robbery)[20] – a period of five (5) to ten (10) years imprisonment to be served at a state correctional institution. The Defendant's sentences regarding Counts 1, 8, 9, and 10 were directed to be served consecutive to each other, while the sentences per Counts 11, and 12 were to run concurrently with one another and that of Count 8. The Defendant's aggregate sentence was thus twenty (20) to forty (40) years incarceration at a state correctional institution. Defendant Spurell's sentence in the above-captioned matter was also directed to be served consecutive to his case under the docket, *Commonwealth v. Spurell*, No. MC-51-CR-0231321-2005 - Philadelphia County. The Defendant was as well deemed ineligible for recidivism risk reduction incentive consideration, 61 Pa.C.S. §§4501 *et seq.* N.T. 6/26/13, pp. 24-26. *See also* Certificate of Imposition of Judgment of Sentence.[21]

---

[15] *Id.*
[16] 18 Pa.C.S. §3701.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

[21] At sentencing, per the prosecution's timely invocation of the same, the court imposed mandatory minimum sentences pursuant to Sentences Committed with Firearms, 42 Pa.C.S. §9712. *See* Certificate of Judgment of Imposition of Sentence. *See also* N.T. 6/26/13, pp. 21-26.

This court is very well aware that the Superior Court in *Commonwealth v. Valentine*, 101 A.3d 801, 811-12 (Pa.Super. 2014) found the Sentences Committed with Firearms mandatory sentencing provisions, 42 Pa.C.S. §9712, constitutionally invalid based on the United States Supreme Court teachings of *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013). This court also recognizes that the Superior Court has additionally held a number

4

The lawyer for the Defendant on or about June 27, 2013, filed a timely Motion to Challenge the Verdict Against the Weight of the Evidence and Dismissal Pursuant to Commonwealth's Failure to Comply with Rule 600. *See* Defendant's Post-Sentence Motion dated June 27, 2013. Although the court as discussed *infra* made no decision regarding this post-sentence motion, the Delaware County Office of Judicial Support failed to enter an order denying the same by operation of law. *See* Pa.R.Crim.P. 720(B)(3)(a)(" ... [T]he judge shall decide the post-sentence motion, ... within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, ... the motion *shall* be deemed denied by operation of law.") (Emphasis added).

---

of Pennsylvania's other mandated sentencing statutes similarly constitutionally infirm. *See Commonwealth v. Newman*, 99 A.3d 83 (Pa.Super. 2014)(*en banc*)(Finding unconstitutional the mandated minimum sentence pursuant to 42 Pa.C.S. §9712.1.); *Commonwealth v. Thompson*, 93 A.3d 478 (Pa.Super. 2014)(Concluding the mandatory minimum provisions of 18 Pa.C.S. §7508 are constitutionally invalid.); *Commonwealth v. Wolfe*, 106 A.3d 800 (Pa.Super. 2014), *appeal granted*, 121 A.3d 433 (Invalidating the mandatory minimum sentences set forth by 42 Pa.C.S. §9718.); and *Commonwealth v. Watley*, 81 A.3d 108 (Pa.Super. 2014)(*en banc*)(Holding the mandated minimum sentence per 42 Pa.C.S. §9712.1 unconstitutional.) The Pennsylvania Supreme Court as well has found the Drug Free School Zones' mandatory sentencing provision, 18 Pa.C.S. §6317, unconstitutional condemning its statutory scheme which vests a factual determination necessary to a mandated sentence's imposition with the judge versus the jury and allows proof of such a factual circumstance by the lesser preponderance of the evidence burden. *Commonwealth v. Hopkins*, 117 A.3d 247, 262 (Pa. 2015). *See also* 42 Pa.C.S. §9712(b).

While Defendant Spurell did not in his statement of matters complained raise a challenge to his mandatory minimum sentences such a claim should not be seen waived on appeal as it pertains to the sentencing legality and is thus unwaivable. *Commonwealth v. Valentine supra* 101 A.3d at 809 ("Although Appellant did not raise this claim before the trial court, this Court in *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa.Super. 2013)(*en banc*), addressing the *Alleyne* decision, observed that where '[a]pplication of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limit[,] [such] [l]egality of sentence questions are not waivable.' Because Appellant's claim falls within this 'narrow class of cases ... considered to implicate illegal sentences,' we address its merits. *Watley*, 81 A.3d at 118.") *See also Commonwealth v. Wolfe supra* 106 A.3d at 801-02 and *Commonwealth v. Newman supra* 99 A.3d at 90-91. This court is aware that presently pending before the Pennsylvania Supreme Court is a case challenging this same issue, "[w]hether a challenge to a sentence pursuant to *Alleyne v. United States*, 133 S.Ct. 2151 (2013), implicates the legality of the sentence and is therefore non-waivable." *See Commonwealth v. Barnes*, 36 EAP 2015, Order dated September 18, 2015.

Acknowledging that the above-captioned matter is currently postured as a direct appeal from Defendant Spurell's judgment of sentence, this court given those appellate decisions cited above believes that while his convictions should all be affirmed for the reasons the opinion discusses, the Defendant's mandatory minimum sentences should be set aside and the case remanded to allow resentencing,

5

The Defendant on or about May 16, 2014, filed a *pro se* Petition for Post-Conviction Collateral Relief … . *See* Defendant's PCRA Petition. Consistent with his request for counsel's assistance, this court per order of the same day (May 16, 2014) appointed Henry DiBenedetto Forrest, Esquire stewardship of the Defendant's collateral litigation. *See* Order dated May 16, 2014.

After granting collateral counsel's extension application by order of court, a counseled, Amended Petition for Post-Conviction Hearing Relief under the PCRA (Petition for Reinstatement of Direct Appeal Rights) was lodged on or about March 12, 2015. *See* Amended Petition.

Per an order of that the same date (March 12, 2015), the court directed the Commonwealth to file an answer to the Defendant's amended PCRA petition. *See* Order dated March 12, 2015.

Through correspondence of June 3, 2015, the Commonwealth's attorney requested additional time within which to lodge the Commonwealth's answer to the Defendant's counseled, collateral petition and its evidentiary hearing demand. *See* Request for Extension of Time.

After the granting of such an extension application via an order of June 11, 2015, the Commonwealth later the same day (June 11, 2015) lodged its answer. *See* Order dated June 11, 2015. *See also* Commonwealth's Answer.

A resultant evidentiary hearing by an order of June 26, 2015, was scheduled material to the Defendant's counseled, amended collateral petition to take place on August 6, 2015. *See* Order dated June 26, 2015.

On August 6, 2015, as then set before this court a collateral hearing commenced and concluded. N.T. 8/6/15.

At this PCRA hearing (August 6, 2015), it was recognized of-record that while the Administrative Office of Pennsylvania Courts Delaware County Computerized Criminal System listed the Defendant's trial attorney lodging of-record on or about June 27, 2013, a Motion to Challenge the Verdict Against the Weight of the Evidence and Dismissal Pursuant to the Commonwealth's Failure to Comply with Rule 600, this post-sentence pleading for whatever the reasons was not forwarded and/or otherwise made known by the Delaware County Judicial Support Office to this court. *See* AOPC Docket. It was relatedly recognized of-record that for unknown reasons the Judicial Support Office of Delaware County as well did not cause to be entered an order denying this post-sentence motion by operation of law, despite the court having made no decision regarding the same given that on its filing this pleading was never brought to this judge's attention. *See* Pa.R.Crim.P. 720(B)(3)(a). An examination of the court's file maintained by the Judicial Support Office further revealed that this post-sentence motion was not then even included as part of the same.[22] N.T. 8/6/15, pp. 4-6.

Recognizing the systematic breakdown described immediately above, the attorneys collectively acknowledged that neither trial counsel nor Defendant Spurell were obviously afforded any notice of the direct appeal period beginning to run and that absent the entry of an order denying, via operation of law, the post-sentence motion (June 27, 2013), the thirty (30) day

---

[22] On coming to learn that trial counsel past filed a post-sentence motion, and this pleading was not included in the Delaware County Judicial Support Office's file, yet docketed of-record, the court's clerk, after the collateral hearing, scoured through the Judicial Support Office and located a secondary or "dummy" case file which contained this post-sentence lodging and various other original, court documents. All these materials were thereafter made part of the Judicial Support Office's official court file.

7

period for the filing of a direct appeal with the Superior Court from the sentencing judgment at bar had not commenced. *See* Pa.R.Crim.P. 720(B)(4). *See also* Pa.R.A.P. 108(a)(1)(d)(1).

Resultantly, the Defendant's collateral lawyer and the Commonwealth's attorney agreed this court was to compel the Delaware County Judicial Support Office to enter an order denying by operation of law the past, timely filed post-sentence motion (June 27, 2013) which on its entry, would make final the Defendant's judgment of sentence and begin the thirty (30) day period for the lodging of a direct appeal. N.T. 8/6/15, pp. 4-9. *See also* Denial of Post-Sentence Motion by Operation of Law dated August 7, 2015. The lawyers relatedly concurred that the court was also to enter an order denying as premature the amended PCRA petition accepting that Defendant Spurell's sentencing judgment had not been made final.

On August 7, 2015, the Director of the Delaware County Judicial Support filed of-record the operation of law order finally denying the Defendant's long past filed post-sentence motion. *See* Denial of Post-Sentence Motion by Operation of Law Order dated August 7, 2015. This court on the same day (August 7, 2015) as well dismissed Defendant Spurell's amended PCRA petition. *See* Order dated August 7, 2015.

Defendant Spurell, on August 11, 2015, timely filed, in light of that recounted above, a counseled Notice of Appeal. *See* Notice of Appeal dated August 11, 2015. The court through an order of August 25, 2015, directed the Defendant's lawyer to lodge of-record a Concise Statement of Matters Complained of on Appeal. *See* Order dated August 25, 2015. Responding to this order (August 25, 2015), Defendant Spurell's attorney belatedly lodged on September 16, 2015, a statement of appellate complaints. *See* Statement of Matters Complained.

## II. Waiver

Initially, this court is constrained to discuss Defendant Spurell's untimely filing of his statement of matters complained. *See* Defendant's Statement of Matters Complained and Order dated August 25, 2015.

Recently, the Pennsylvania Superior Court in addressing the late lodging of a Pa.R.A.P. 1925(b) statement opined per that below:

> First, the trial court maintains that [the defendant] has waived all of his issues on appeal by failing to file a timely statement of matters complained of on appeal pursuant to Rule 1925(b) of our Rules of Appellate Procedure. ***Waiver is no longer the remedy under such situations.*** Where the trial court does not address the issues raised in an untimely 1925(b) statement, we remand to allow the trial court an opportunity to do so. *See Commonwealth v. Thompson*, 39 A.3d 335, 340 (Pa.Super. 2012). On the other hand, where, as here, the trial court has addressed the issues raised in an untimely Rule 1925(b) statement, we need not remand and may address the issues on their merits. *See id.*

*Commonwealth v. Veon*, 109 A.3d 754, 762 (Pa.Super. 2015), *appeal granted on other grounds*, 121 A.3d 954, 955 (Pa. 2015). (Emphasis added). *See also Commonwealth v. Grohowski*, 980 A.2d 113, 115 (2009)("In the event a Rule 1925(b) statement is filed late by a represented criminal defendant, such constitutes *per se* ineffectiveness so that the proper remedy is to remand for the filing of such a statement *nunc pro tunc. Commonwealth v. Burton,* 973 A.2d 428 (Pa.Super. 2009) *(en banc)*").

Furthering the interest of avoiding in this case even additional delay beyond that which to date has been occasioned and consistent with this direction of the appellate courts cited above, the three (3) error assignments raised in Defendant Spurell's matters complained of statement are discussed below, albeit recognizing this statement was belatedly filed.

9

***III. The trial court abused its discretion and/or committed an error of law by denying Defendant's pretrial for dismissal [sic] for violation of Rule 600 and allowing the matter to proceed to trial before jury, where the underlying incident took place in May of 2005 and charges were not brought against him until July 17, 2012, notwithstanding that Defendant was incarcerated and under county supervision, with his whereabouts known by the Commonwealth, from 2008 through 2011.***

By way of his first appellate complaint, Defendant Spurell maintains this court abused its discretion and/or committed legal error by denying his Motion for Dismissal Pursuant to Violation of Rule 600. *See* Statement of Matters Complained, No. 1. *See also* Motion for Dismissal Pursuant to Violation of Rule 600. As the prosecution on the salient and credible case record sufficiently established Defendant Spurell's whereabouts were unknown for the overwhelming majority of the disputed time frame despite the Commonwealth exercising due diligence to secure his apprehension at bar, this court's decision to deny the Defendant's Rule 600 dismissal motion was not mistaken and any such error assignment is meritless. N.T. 4/16/13, p. 12.

Pennsylvania Rule of Criminal Procedure 600[23] in salient part states:

(A)

> (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

> (1) the period of time between the filing of the written complaint and the defendant's arrest, ***provided that the defendant could not be apprehended because his or***

---

[23] The present version of Pennsylvania Rule of Criminal Procedure 600 became effective on July 1, 2013. *See* Pa.R.Crim.P. 600. As Defendant Spurell's Rule 600 claim litigation took place in April 2013, the court for purposes of this appellate complaint references that version of Pennsylvania Rule of Criminal Procedure 600 in effect at the time of the hearing and the challenged dismissal application's denial. Pa.R.Crim.P. 600. *See also* N.T. 4/16/13, p. 12.

> *her whereabouts were unknown and could not be determined by due diligence;* ...
>
> (3) such period of delay at any stage of the proceedings as results from:
>
> > (a) the unavailability of the defendant ... .
>
> (G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. ...
>
> > *If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied* and the case shall be listed for trial on a date certain. ... If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant. ...

*See* Pa.R.Crim.P. 600(A)(3)(C)(1)(G). (Emphasis added).

"Rule 600 generally requires the Commonwealth to bring a defendant ... to trial within 365 days of the date the complaint was filed." *Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa.Super. 2004). The Superior Court recently opined in *Commonwealth v. Sloan*, the following in regard to Pa.R.Crim.P. 600 challenges:

> 'Rule 600 requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control.' If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, 'the motion to dismiss shall be denied.' Pa.R.Crim.P. 600(G).[24] The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft stated, *'[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort.'*

---

[24] The current version of Pa.R.Crim.P. 600 no longer includes Pa.R.Crim.P. 600(G). *See* Pa.R.Crim.P. 600.

11

*See Commonwealth v. Sloan*, 67 A.3d 1249, 1251-52 (Pa.Super. 2013) *quoting Commonwealth v. Bradford*, 616 Pa. 122, 136, 46 A.3d 693, 701-02 (2012). (Emphasis added).

When a court assesses whether the Commonwealth's efforts to apprehend a defendant were duly diligent:

> The test is *not* a venture into hindsight reasoning as to whether, if certain individuals had been contacted, or other things done, an arrest would probably have been made. ***The matter of availability and due diligence must be judged by what was done by the authorities rather than what was not done. The standard of due diligence demands only reasonable efforts.***

*Commonwealth v. Faison*, 471 A.2d 902, 903 (Pa.Super. 1984) *citing Commonwealth v. Hinton*, 409 A.2d 54, 57-58 (Pa.Super. 1979). (Emphasis in original and bold added).

"In considering 'the information available to the police,' we do not ask whether the police had available all the information they *might* have had available-in other words, whether they did all they *could* have done. Instead, we ask whether what they *did* do was enough to constitute due diligence." *Commonwealth v. Laurie*, 334 Pa.Super. 580, 584, 483 A.2d 890, 892 (Pa.Super. 1984) *quoting Commonwealth v. Dorsey*, 294 Pa.Super. 584, 588, 440 A.2d 619, 621 (1982); and *Commonwealth v. Ingram*, 404 Pa.Super. 560, 567-68, 591 A.2d 734, 737 (1991). (Emphasis in original).

The Superior Court in *Commonwealth v. Branch* found that police officials initially exercised sufficient due diligence for purposes of reversing a dismissal pursuant to a Rule 1100 (Rule 600) claim, despite law enforcement after a period of time discontinuing those pursuits. *Commonwealth v. Branch*, 337 Pa.Super. 22, 25-28, 486 A.2d 460, 461-63 (1984). In so concluding, the appellate court well appreciated that "[p]olice officers must make choices, devoting more attention to some crimes than to others, and foregoing some lines of inquiry that

12

they would pursue if they had more resources. *Id.* 337 Pa.Super. at 27, 486 A.2d at 462 *citing Commonwealth v. Dorsey, supra.*

Recognizing that necessary due diligence does not require all encompassing and ceaseless law enforcement efforts, the Superior Court, in *Commonwealth v. McDermott,* found the following investigative actions by involved police to be sufficient to reject a defendant's claim otherwise: Attempted to execute a warrant; Visited areas where the defendant was thought to frequent as well as his known residence; Contacted other police districts; Distributed photographs of the defendant; Communicated with the defendant's employer; and Placed the defendant in the NCIC database. *Commonwealth v. McDermott,* 280 Pa.Super. 535, 536-37, 421 A.2d 851, 852 (1980). Despite such efforts, the defendant remained at large during which time he was arrested twice by the same detective division that had secured the arrest warrant. Resulting from these unrelated arrests, police queried the NCIC database, mistakenly believed the defendant then had no outstanding warrants and on both occasions released him. *Id.* In concluding that the investigative efforts of law enforcement recounted above established due diligence, even though throughout the course of the investigation into his whereabouts the defendant had twice been in the custody of the very same police agency searching for him, the Superior Court observed that below:

> It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful.

*Id.* 280 Pa.Super. at 538, 421 A.2d at 852-53 *quoting Commonwealth v. Mitchell,* 472 Pa. 553, 566, 372 A.2d 826, 832 (1977).

13

Similarly, the Superior Court has found police agencies employed the requisite Rule 600 due diligence through varying degrees of investigative measures, although such efforts, when viewed retrospectively, were not comprehensive and in duration limited. As found per *Commonwealth v Dorsey*, the investigating police acted with due diligence on searching only over a span of months for the defendant by only pursuing the following: Visiting the defendant's residence five (5) times; Entering the defendant's name in the Pennsylvania Crime Center Computer; and Distributing the defendant's photograph. *Commonwealth v. Dorsey supra* 294 Pa.Super. at 590, 440 A.2d at 622. Law enforcement authorities in *Commonwealth v. Cooper* were found to have exercised due diligence on: Placing the defendant's name in the NCIC; Contacting the defendant's parole officer; Visiting locations where the defendant was thought to reside; Searching about the neighborhood for the defendant; Contacting the local law enforcement; Posting photographs of the defendant; Checking with the Bureau of Motor Vehicles as to the defendant's residence; and Contacting the Postal Inspector regarding the defendant's mailing address. *Commonwealth v. Cooper*, 333 Pa.Super. 559, 570, 482 A.2d 1014, 1019 (1984).

The standard of review on appeal relevant to a Pa.R.Crim.P. 600 challenge is one where an appellate court " ... will reverse only if the trial court abused its discretion." *Commonwealth v. Bradford supra* 616 Pa. at 134, 46 A.3d at 700 *quoting Commonwealth v. Selenski*, 606 Pa. 51, 58, 994 A.2d 1083, 1087 (2010). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." *Id. quoting Commonwealth v. Selenski supra* 606 Pa. at 58, 994 A.2d at 1087 *citing Commonwealth v. Wright*, 599 Pa. 270, 310, 961 A.2d 119, 142 (2008). An appeals court is " ...

14

limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party." *Id.* *quoting Commonwealth v. Selenski supra* 606 Pa. at 58, 994 A.2d at 1088 *citing Commonwealth v. Solano,* 588 Pa. 716, 727, 906 A.2d 1180, 1186 (2006).

The Superior Court in *Commonwealth v. Aaron* has also recognized concerning appellate review of a trial court's Rule 600 decision:

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Aaron,* 804 A.2d 39, 42 (Pa.Super. 2002) (*en banc*) (internal citations omitted).

Defendant Spurell lodged on April 15, 2013, his counseled Motion for Dismissal Pursuant to Violation of Rule 600, contending that the Commonwealth, by not bringing him to trial within one (1) year of the criminal complaint's 2005 filing, failed to exercise needed due diligence in locating his whereabouts for at least a significant portion of the intervening years. *See* Motion for Dismissal Paragraph Nos. 1-3.[25] More specifically, the Defendant maintained per his motion that had investigating police officials diligently pursued him given his arrest and incarceration in 2008, his being in 2010 placed on probation and under court oversight through

---

[25] Defendant Spurell through counsel seemingly conceded that his whereabouts from the arrest warrant's issuance in May 2005 through his unrelated Philadelphia County arrest as of 2008 were not known to the Commonwealth, even with law enforcement acting diligently to locate him. *See* Motion for Dismissal – Paragraph No. 3. *See also* N.T. 4/15/13, pp. 47-49. N.T. 4/16/13, pp. 4-6.

2011, his whereabouts thus should have been known to the Commonwealth well prior. *See* Motion for Dismissal – Paragraphs 3, 4, 7.

On the same day (April 15, 2013), a hearing stemming from this dismissal motion began before this court, later was adjourned at defense counsel's request, resumed and concluded the next day, April 16, 2013. N.T. 4/15/13, pp. 58-59. Consistent with the motion's averments, his lawyer contended that because of Defendant Spurell's various contacts with the Philadelphia court and penal systems, as well as his subsequent incarceration at state correctional institutions during the intervening times, the Delaware County District Attorney's Office and/or the Aston Township Police Department should have then been much sooner aware of his location(s). The Defendant's attorney relatedly argued that the charging police agency and/or involved prosecutor's office was obligated to implement some type of protocol in coordination with all other material criminal justice organizations of the Commonwealth to review on a weekly, monthly, bi-annual, or at least yearly basis whether all persons wanted before the Delaware County courts were imprisoned other than at the George W. Hill Correctional Facility (Delaware County Prison). In sum, defense counsel, on advancing support of the dismissal claim, focused solely on what he felt was not done by the police and summarily ignored those efforts law enforcement undertook to locate the Defendant. N.T. 4/15/13, pp. 5-9, 49-58 and N.T. 4/16/13, pp. 3-10. Salient to current considerations, the facts summarized *infra* were established at these proceedings. N.T. 4/15/13 and N.T. 4/16/13.

The Commonwealth first verified that the criminal complaint was filed against the Defendant with the Magisterial District Court on May 13, 2005. N.T. 4/15/13, p. 9. *See also* Commonwealth's Exhibit CM-1 – Criminal Complained dated May 13, 2005. The Commonwealth next established that following the identification of Defendant Spurell as a

16

suspect in the robbery of a Family Dollar store in Aston, Pennsylvania and the lodging of the criminal complaint, his relevant information was entered into National Crime Information Center ("NCIC") database by Sergeant Jeffrey Brown, Aston Township Police Department, on May 13, 2005. N.T. 4/15/13, pp. 11-12, 24. *See also* Commonwealth Exhibit CM-2 – NCIC Entry Worksheet. The NCIC is a database of suspects presently at large with nationwide criminal justice agency accessibility, and in the event a wanted defendant is placed in custody elsewhere, the apprehending agency on such a query is notified of the outstanding warrant-detainer in the original jurisdiction and informs the initiating law enforcement department of a person's custodial seizure. N.T. 4/15/13, pp. 18-19. Generally, through the use of the NCIC database the reporting police department is quickly advised of a suspect's subsequent apprehension by an involved criminal justice agency. N.T. 4/15/13, p. 20. Defendant Spurell remained on the NCIC system throughout the continuing investigation from the criminal complainant's lodging, May 13, 2005, until he was transported to George W. Hill Correctional Facility (Delaware County Prison) on June 12, 2012. N.T. 4/15/13, p. 15.

In addition to timely entering Defendant Spurell's relevant information onto the NCIC database, the Aston Township Police Department issued a broadcast on the same date the criminal complaint was lodged and resulting arrest warrant issued (May 13, 2005) to all Delaware County law enforcement officials to "be-on-the-lookout" for the Defendant. N.T. 4/15/13, pp. 12-13.

During the course of his investigation, Sergeant Brown also determined that the Defendant did not reside in Delaware County, as well as that he was not incarcerated at the George W. Hill Correctional Facility (Delaware County Prison). N.T. 4/15/13, p. 13.

17

Subsequent and timely to the criminal complaint being filed and arrest warrant's issuance, Detective David Berkeyheiser, Aston Township Police Department, on discovering Defendant Spurell's last known residence was that of Philadelphia County, contacted the Philadelphia Police Warrant Division for assistance in apprehending the Defendant. N.T. 4/15/13, p. 26. Despite their efforts, the Philadelphia Warrant Division was unsuccessful in their attempts to locate Defendant Spurell. N.T. 4/15/13, p. 27.

Detective Berkeyheiser also sought and secured the assistance of the United States Marshals in a further effort to apprehend the Defendant by taking part in a program entitled Operation Falcon during both the years of 2006 and 2007. N.T. 4/15/13, pp. 27-28. Operation Falcon is a weeklong program spearheaded by the United States Marshals Service that is coordinated with local law enforcement agencies to locate individuals currently wanted through active warrants. N.T. 4/15/13, p. 27. In both 2006 and 2007, joint searches between the Aston Township Police Department and the United States Marshals through Operation Falcon were conducted for Defendant Spurell. N.T. 4/15/13, p. 28. Despite these two (2) investigative search efforts, Detective Berkeyheiser and the United States Marshals were unsuccessful in locating and apprehending the Defendant. N.T. 4/15/13, pp. 28-29. In the event that a fugitive is not apprehended during Operation Falcon's active investigations, the United States Marshals retain the suspect's information for future notifications should he or she later be placed in unrelated custody. N.T. 4/15/13, p. 28.

Per the stipulation of the attorneys, a copy of the Defendant's Philadelphia prison system record was admitted at the Rule 600 hearing. N.T. 4/15/13, p. 32. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information. This documentation revealed that Defendant Spurell, as of 2008, was incarcerated in

Philadelphia County and state correctional institutions, on probation in Philadelphia County and/or otherwise at large during the time period he was being pursued by the Aston Township Police Department, the Philadelphia Police Warrant Division, and the United States Marshals. N.T. 4/15/13, p. 32. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information.[26]

Defendant Spurell's prison system record first indicated that he was past arrested in Philadelphia on February 25, 2005. N.T. 4/15/13, p. 34. Following his arrest on February 25, 2005, Defendant Spurell was released on bail at an unknown date. N.T. 4/15/13, pp. 36-37. A bench warrant was issued on March 11, 2008, for the Defendant in Philadelphia County stemming from his failure to appear at a trial listing. N.T. 4/15/13, pp. 37-38. This bench warrant (March 11, 2008) was then rescinded on July 24, 2008, after the Defendant was apprehended in Philadelphia County. N.T. 4/15/13, p. 38. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information.

A second bench warrant was issued on March 16, 2009, by the Philadelphia courts for the Defendant resulting from his again failing to appear at a scheduled court listing. N.T. 4/15/13, p. 38. This second bench warrant was rescinded on April 24, 2009. N.T. 4/15/13, p. 39. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information.

Following the disposition of his case on July 6, 2009, the Defendant was sentenced by the Philadelphia County Court of Common Pleas to an eleven and one half (11.5) to twenty-three

---

[26] The information about the Defendant's commitments and recommitments was further supplemented by the Assistant District Attorney's explanatory narrative about his related Philadelphia County court involvement, all proffered by stipulation and/or without disputed otherwise. N.T. 4/15/13, pp. 32-44.

19

(23) month county prison sentence. N.T. 4/15/13, p. 39. *See* Commonwealth Exhibit CM-3 –

Philadelphia Prison System Classification Movement and Record Unit Information.

A bench warrant was issued on September 27, 2010, stemming from Defendant Spurell's

violation of probation. N.T. 4/15/13, p. 39. Following a Gagnon II hearing that took place on

October 13, 2011, the Defendant was sentenced anew. N.T. 4/15/13, pp. 39-40. *See also*

Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and

Record Unit Information.

Defendant Spurell was then transferred on October 17, 2011, to the Graterford state

correctional institution. N.T. 4/15/13, pp. 40-41. The Defendant was next subsequently

transferred on November 14, 2011, to the Camp Hill state correctional institution. N.T. 4/15/13,

p. 41. Defendant Spurell was finally moved on February 1, 2012, to the state correctional

institution at Forest. N.T. 4/15/13, p. 41. After being transferred to the Forest state correctional

institution, the Delaware County District Attorney's Office was notified on May 7, 2012, of the

Defendant's imprisonment at that penal facility and a resulting detainer was issued the same date

(May 7, 2012). N.T. 4/15/13, pp. 41-42.

Defendant Spurell was transported on June 12, 2012, to George W. Hill Correctional

Facility (Delaware County Prison). N.T. 4/15/13, p. 42. The Defendant's preliminary hearing

took place on July 11, 2012, before the Magisterial District Court. *See* AOPC Docket. On

August 9, 2012, Defendant Spurell was formally arraigned before the trial court. *See* AOPC

Docket.

The Defendant's first listing before this court was on August 27, 2012, for a pre-trial

conference. *See* AOPC Docket. The matter was then scheduled for trial on October 15, 2012, at

which per defense counsel's request the case was continued. *See* AOPC Docket. *See also* N.T.

4/15/13, p. 7. A second trial listing before this court took place on November 7, 2012, where the Defendant's attorney again sought a continuance. N.T. 4/15/13, p. 7. *See also* AOPC Docket. On December 21, 2012, Mr. Malley was appointed as the Defendant's trial lawyer, resulting from the Delaware County Public Defender's Office having just lodged its conflict petition. *See* Petition to Appoint Counsel and Order dated December 21, 2012. At the next trial date of January 8, 2013, Mr. Malley requested a continuance. N.T. 4/15/13, p. 7. *See also* AOPC Docket. Following another defense counsel rescheduling request, trial was once more continued on January 14, 2013. On January 18, 2013, defense counsel again continued trial until February 26, 2013. N.T. 4/15/13, p. 7. *See also* AOPC Docket. Due to the unavailability of Defendant Spurell's attorney on February 26, 2013, trial was once more reset to April 15, 2013. N.T. 4/15/13, p. 7. *See also* AOPC Docket.

On April 15, 2013, the relevant hearing regarding the Defendant's Motion for Dismissal Pursuant to Violation of Rule 600 took place. *See* Motion for Dismissal Pursuant to Violation of Rule 600. This court on April 16, 2013, denied Defendant Spurell's Rule 600 dismissal claim and immediately after the denial of this motion, his trial commenced.[27] N.T. 4/16/13, p. 12.

---

[27] Subsequent to SCI Forest being the first penal facility to seemingly conduct an NCIC query of Defendant Spurell and notifying the District Attorney's Office of his whereabouts, any delay in the matter moving to trial was clearly not attributable to the prosecution, but rather resulted from the numerous, defense continuance applications. N.T. 4/15/13, p. 7 and AOPC Docket. *See also Commonwealth v. Hunt supra* 858 A.2d at 1241.

The Pennsylvania Supreme Court in *Commonwealth v. Hunt* has past provided the below guidance in calculating a Rule 600 claim:

> In assessing a Rule 600 claim, the court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances the defendant requested ... . If the defense does indicate approval or acceptance of the continuance, the time associated with the continuance is excludable under Rule 600 as a defense request. *Commonwealth v. Guldin*, 502 Pa. 66, 71, 463 A.2d 1011, 1014 (1983).

*Id.*

21

While it is uncontroverted the prosecution did not bring Defendant Spurell to trial without one (1) year of the date the criminal complaint was lodged against him (May 13, 2005) as approximately intervening eight (8) years accrued until the start of his trial (April 16, 2013), the Commonwealth, on the material record at bar, credibly established by a preponderance of the evidence that reasonable due diligence was exercised in its efforts to ascertain his whereabouts and despite such, the Defendant's location was not known to the prosecution until it was finally contacted in May 2012 by SCI Forest personnel. *See Commonwealth v. Sloan, supra,* 67 A.3d at 1251-52, *quoting Commonwealth v. Bradford, supra,* 616 Pa. at 136, 46 A.3d at 701-02.

This court declined to engage in the hindsight analysis mandated by defense counsel's argument of focusing on just that which he believed investigating police should have done to sooner locate the Defendant, but rather, as past held by the appellate courts, viewed the salient evidence of those efforts law enforcement in fact undertook to learn of Defendant Spurell's whereabouts. *Commonwealth v. Faison, supra,* 471 Pa. at 903, citing *Commonwealth v. Hinton, supra,* 409 A.2d at 57-58. *See also Commonwealth v. Laurie, supra,* 334 Pa.Super. at 584, 483 A.2d at 892, *quoting Commonwealth v. Dorsey, supra,* 294 Pa.Super. at 588, 440 A.2d at 621; and *Commonwealth v. Ingram, supra,* 404 Pa.Super. at 567-68, 591 A.2d at 737. Moreover, it is not for this court to substitute its or the subjective judgment of the Defendant's lawyer " ' ... and second-guess the methods used by police to locate ...' " Defendant Spurell. *Commonwealth v. McDermott, supra,* 280 Pa.Super. at 538, 421 A.2d at 852-53, *quoting Commonwealth v. Mitchell supra* 472 Pa. at 566, 372 A.2d at 832. To the contrary, the investigative avenues utilized by law enforcement are to be afforded deference. *Id.* When the instant case record is viewed under these proper standards, the denial of the Defendant's Rule 600 dismissal claim is evident.

From the criminal complaint's lodging against the Defendant and the resultant issuing of an arrest warrant through 2007 involved police actively pursued his whereabouts. Defendant Spurell's wanted person status was timely listed in the NCIC nationwide database. N.T. 4/15/13, pp. 11-12. *See also* Commonwealth Exhibit CM-2 – NCIC Entry Worksheet. The Aston Township Police Department had an immediate county wide law enforcement alert issued for the Defendant. N.T. 4/15/13, pp. 12-13. On learning that Defendant Spurell was most probably a Philadelphia County resident, an investigating detective made contact with the Philadelphia Police Warrant Division and enlisted its assistance in an effort to locate the Defendant. N.T. 4/15/13, p. 27. This same investigating detective thereafter as well sought and secured the aid of the United States Marshals Service through which, in both 2006 and 2007 such combined federal and local law enforcement attempts were made to learn of Defendant Spurell's whereabouts. N.T. 4/15/13, pp. 27-29.

Although the proactive investigative efforts detailed above slowed subsequent to 2007, pursuit of the Defendant certainly remained ongoing through his apprehension. The Marshals Service retained his relevant information and wanted status in the event Defendant Spurell was later taken into unrelated custody. N.T. 4/15/13, p. 28. Additionally, of even greater consideration, the Defendant's status as an accused wanted in connection with the above-captioned matter remained in the NCIC national database until the day he was committed at bar to the George W. Hill Correctional Facility (Delaware County Prison) and was the seeming mechanism through which SCI Forest personnel finally came to notify the Delaware County District Attorney's Office of Defendant Spurell's whereabouts. N.T. 4/15/13, pp. 15, 18-20, 41-42.

Simply because the affirmative actions of police officials searching for the Defendant over time lessened does vitiate those efforts law enforcement in fact undertook. As the Superior Court has past recognized police authorities are constrained to " ... make choices, devoting more attention to some crimes than to others, and foregoing some lines of inquiry that they would pursue if they had more resources." *Commonwealth v. Branch, supra,* 337 Pa.Super. at 27, 486 A.2d at 462, *citing Commonwealth v. Dorsey supra.*

This court cannot readily discern from the record at bar why, despite Defendant Spurell's listing in the NCIC database, Delaware County authorities were not notified of neither his commitments to the Philadelphia penal system nor his admission to the Graterford and Camp Hill state correctional institutions. The court similarly on the instant record was not afforded a direct explanation about why his Philadelphia County court involvement did not trigger notification via NCIC of the Defendant's whereabouts. N.T. 4/15/13, pp. 34, 37-38, 39, 41-42. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information. Even defense counsel acknowledged that the Philadelphia County and state penal systems failed to make standard and reasonably expected fugitive inquiries and/or notifications. N.T. 4/15/13, p. 9.

Undoubtedly, Defendant Spurell failing to appear before the courts of Philadelphia County for scheduled court listings and twice being a bench warranted fugitive most probably added a layer of systematic confusion to his whereabouts as did the issuance of a third bench warrant for his being in violation of that jurisdiction's court supervision.[28] N.T. 4/15/13, pp. 36-

---

[28] As for defense counsel's argument that beyond the prompt NCIC "wanted person" designation had investigating police and/or the Delaware County District Attorney's Office regularly contacted other jurisdictions, including Philadelphia, the Defendant's whereabouts would have been known sooner, this court was just not overly impressed. N.T. 4/15/13, pp. 6-8, 47, 51-52. N.T. 4/16/13, pp. 5-10. Given Defendant Spurell was on some occasions in the custody of Philadelphia County authorities while at other times released on bail, a probation-parole absconder, in multiple instances a bench warranted fugitive, and transferred to the state prison system within three (3) days of his

24

40. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information. The Defendant's custodial transfer from the Philadelphia penal system to the state prison system, and subsequent transfer within approximately three (3) months to three (3) different state correctional institutions beginning within three (3) days of his October 13, 2011, Philadelphia County Gagnon II hearing, also most likely played a role in the notification of his location not being made known to Delaware County authorities until his last SCI placement, while at all times yet being referenced in the NCIC database as a wanted subject. N.T. 4/15/13, pp. 39-42. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information.

The systematic failure of criminal justice agencies as described above to follow expected procedures and resulting trial delays has been past addressed in the context of Rule 600 claims by the Superior Court per that below:

> The prosecutor cannot be charged with responsibility for the delay because the system seems unable to find ... defendants in their custody. ...
>
> While it is difficult in an individual case to ascertain which of a number of agencies are at fault ... [n]one report to the prosecutor ... .

*Commonwealth v. Mines*, 797 A.2d 963, 965, 966 (Pa.Super. 2002).

Although the instant record does not afford any direct explanation about why Defendant Spurell's whereabouts were not made known sooner to the Aston Township Police Department and/or Delaware County District Attorney's Office via the long standing NCIC entry of his wanted status at bar on his Philadelphia County arrest, court involvement and resulting

---

October 2011 Gagnon II hearing, any such contacts would have at best been random chances of then ascertaining his whereabouts. N.T. 4/15/13, pp. 36-42. *See also* Commonwealth Exhibit CM-3 – Philadelphia Prison System Classification Movement and Record Unit Information.

commitments to that county's as well as the state penal system, such failures from that cited above are circumstances of delay " ' ... beyond the Commonwealth's control ... .' " *Commonwealth v. Sloan supra* 67 A.3d at 1251-52 *quoting Commonwealth v. Bradford supra* 616 Pa. at 136, 46 A.2d at 701-02. *See also Commonwealth v. Mines supra* 797 A.2d at 966 (" ...[T]he delays were occasioned by agencies outside the control of the prosecution ... .")

This court past concluded that the Commonwealth by a preponderance of the evidence demonstrated that it acted with due diligence in its attempt to bring Defendant Spurell to trial. N.T. 4/16/13, p. 12. The Defendant's unknown whereabouts due to his incarceration in both the Philadelphia and state penal systems, as well as probationary supervision was beyond the Commonwealth's control and knowledge. *See Id.* and *Commonwealth v. Sloan supra* 67 A.2d at 1251-52 *quoting Commonwealth v. Bradford supra* 616 Pa. at 136, 46 A.3d at 701–02. *See also* Pa.R.Crim.P. 600(C)(1). Once finally being notified via its previous and promptly undertaken NCIC entry of the Defendant's location, the Commonwealth quickly acted and the requisite proceedings resulted. If this court were to have found otherwise the Philadelphia County and state penal systems' respective failures to advise the Delaware County District Attorney's Office and/or the Aston Township Police Department of the Defendant's incarceration would have " ... insulate[d] the [Defendant] from good faith prosecution delayed through no fault of the Commonwealth." *Commonwealth v. Aaron supra* 804 A.2d at 42.

In reaching its decision as to the Delaware County District Attorney's Office and/or the Aston Township Police Department's due diligence, the court did not "venture into a hindsight reasoning as to whether, if certain individuals had been contacted, or other things done, an arrest would probably have been made," but instead examined the varied and affirmative action these authorities undertook. *Commonwealth v. Faison, supra,* 471 A.2d at 903. *See also*

26

*Commonwealth v. Laurie, supra,* 334 Pa.Super. at 584, 483 A.2d at 892 *quoting Commonwealth v. Dorsey, supra,* 294 Pa.Super. at 588, 440 A.2d at 621; and *Commonwealth v. Ingram, supra,* 404 Pa.Super. at 567-68, 591 A.2d at 737.

Similar to the authorities in *Commonwealth v. Branch,* the Aston Township Police Department initially conducted an extensive search for the Defendant. *Commonwealth v. Branch, supra.* Throughout their preliminary investigation the Aston Township Police Department oversaw the following steps to located Defendant Spurell: Entered the Defendant's information into the NCIC database; Contacted the Philadelphia Warrant Division to search for the Defendant at his last known residence; Issued a "be on the lookout" for the Defendant to other Delaware County law enforcement agencies, Communicated with George W. Hill Correctional Facility (Delaware County Prison) to find out if the Defendant Spurell was incarcerated at that location; and Took part in two (2) weeklong searches with the United States Marshals. N.T. 4/15/13, pp. 11-13, 15, 26-28. Examining the police actions in the light of previous and comparable matters reveals that the Commonwealth did demonstrate due diligence. *Commonwealth v. Branch supra* 337 Pa.Super. at 25-28, 486 A.2d at 461-63; *Commonwealth v. McDermott supra. See also Commonwealth v. Dorsey supra* 294 Pa.Super. at 590, 440 A.2d at 622 and *Commonwealth v. Cooper supra* 333 Pa.Super. at 570, 482 A.2d at 1019.

Only after these wide-ranging pursuits continued for a number of years did the Aston Township Police Department eventually begin to limit their affirmative search for the Defendant. However, as their prior acts during the early stages of the investigation unquestionably demonstrated due diligence, the Aston Township Police Department cannot be faulted for eventually limiting their proactive measures in their search for the Defendant as other concerns of importance required their attention together with law enforcement's acknowledged finite

27

resources. *Commonwealth v. Branch ,supra,* 337 Pa.Super. at 27, 486 A.2d at 462 *citing Commonwealth v. Dorsey,supra.*

Although Defendant Spurell may argue the Commonwealth's efforts to ascertain his whereabouts fell short of " … perfect vigilance and punctilious case … ," the prosecution at bar sufficiently and credibly established that which it was required, " ' a showing the Commonwealth … put forth a reasonable effort.' " *Commonwealth v. Sloan ,supra,* 67 A.3d at 1251-52 *quoting Commonwealth v. Bradford, supra,* 616 Pa. at 136, 46 A.3d at 701-02.

Viewing this court's denial of the defense motion in the light most favorable to the Commonwealth, the decision to reject the Defendant's Rule 600 dismissal claim should stand, as this court did not commit an abuse of discretion. *Commonwealth v. Bradford,supra,* 616 Pa. at 134, 46 A.3d at 700 *quoting Commonwealth v. Selenski,supra,* 606 Pa. at 58, 994 A.2d at 1087. By denying the Defendant's motion, this court did override or misapply the law at bar or reach a decision based on "partiality, prejudice, bias or ill-will … ." *Commonwealth v. Bradford,supra,* 616 Pa. at 134, 46 A.3d at 700 *quoting Commonwealth v. Selenski,supra,* 606 Pa. at 58, 994 A.2d at 1087 *citing Commonwealth v. Wright supra* 599 Pa. at 310, 961 A.2d at 142. The court simply did not find the dismissal of the Defendant's charges was warranted because the Philadelphia County and state penal systems did not, for whatever the reasons, undertake expected NCIC inquiries and resultantly inform the Delaware County District Attorney's Office and/or the Aston Township Police Department sooner of the Defendant's various locations. *Commonwealth v. Aaron,supra,* 804 A.2d at 42. In reaching its decision, this court provided due consideration to " … the accused's speedy trial rights, and … the protection of society." *Commonwealth v. Aaron,supra,* 804 A.2d at 42. The Defendant's error assignment is meritless.

28

*IV. Defendant's convictions on charges of Robbery – Threaten with Immediate Serious Bodily Injury (five counts), 18 Pa. C. S. A § 3701 §§ A(1)(ii) [sic]; and Criminal Conspiracy (one count), 18 Pa. C. S. A § 903 §§ (A)(1) [sic] were against the weight and sufficiency of the evidence, where the matter should not have proceeded to trial as a result of the violation of Defendant's Rule 600 rights.*

By this appellate complaint,[29] Defendant Spurell is jointly challenging the sufficiency as well as the weight of the evidence regarding his five (5) Robbery[30] convictions and one (1) Criminal Conspiracy to commit Robbery[31] conviction. Beyond the sufficiency and weight of the evidence error assignments both just lacking merit, the Defendant's legal sufficiency claim relating to all six (6) convictions should be deemed waived.

The Superior Court has in the past observed that below relating to sufficiency of the evidence challenges on direct appeal:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, *the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009). 'Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.'

*Commonwealth v. Veon supra* 109 A.3d at 775.

A failure to specify the elements of the convicted crimes being challenged on appeal will thus result in a legal sufficiency claim's waiver. *Id. citing Commonwealth v. Garland supra* 63

---

[29] Defendant Spurell again avers in his second appellate complaint that " … the matter should not have proceeded to trial as a result of the violation of Defendant's Rule 600 rights." *See* Statement of Matters Complained, No. 2. As this court past discussed the Defendant's appellate challenge to his Rule 600 motion's denial, it sees no reason to once again address the same. *See* Section III of this opinion. Moreover, this court is unaware of any legally cognizable nexus between the Rule 600 dismissal claim and this appellate complaint's targeting of the trial evidence. Hence, this court will now review Defendant Spurell's legal sufficiency and weight of the evidence claims. *See* Statement of Matters Complained, No. 1.

[30] 18 Pa.C.S. §3701.
[31] 18 Pa.C.S. §903(3701).

29

A.3d at 344. *See also Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa.Super. 2004) *citing Commonwealth v. Lemon* 804 A.2d 34, 37 (Pa.Super. 2002) and *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super. 2002).

The Defendant via his present appellate complaint is challenging all five (5) of his Robbery[32] and his single Criminal Conspiracy to commit Robbery[33] convictions without having identified even a single element(s) of those crimes that he maintains the trial evidence did not establish in support of this error assignment that as a matter of law his convictions are infirm. As Defendant Spurell has failed to specify the purported elements of these convictions that he is presently challenging on appeal, his complaints on appeal targeting the sufficiency of the evidence should be deemed waived. *Id. citing Commonwealth v. Garland supra* 63 A.3d at 344.

Assuming *arguendo* that the Defendant did not waive the legal sufficiency challenges by failing to identify the elements supposedly not proven at trial salient to his five (5) Robbery[34] and Criminal Conspiracy to commit Robbery[35] convictions, the Defendant's sufficiency of the evidence averments are still meritless.

In evaluating any type of sufficiency claim, the court must accept the evidence in the light most favorable to the Commonwealth and also drawing all rational evidentiary inferences determine whether a reasonable jury could have found that each element of the crime(s) charged was established beyond a reasonable doubt. *Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007) and *Commonwealth v. Rosario*, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994) *citing Commonwealth v. Calderini*, 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992) *citing Commonwealth v. Jackson*, 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court

---

[32] 18 Pa.C.S. §3701.
[33] 18 Pa.C.S. §903(3701).
[34] 18 Pa.C.S. §3701.
[35] 18 Pa.C.S. §903(3701).

reviewing a sufficiency challenge " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa.Super. 2011) *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003) *quoting Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super. 2003), *appeal denied*, 575 Pa. 691, 835 A.2d 709 (2003).

The evidence at trial need not " ... preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt." *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549, *appeal denied,* 575 Pa. 691, 835 A.2d 709. Although a conviction must be based on " ... more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis*, 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super. 1997). " ... [I]f the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

These long settled principles of law governing a sufficiency challenge are equally applicable to cases where the evidence is circumstantial rather than direct, provided that the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Cox*, 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered "[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006). *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the fact finder is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of all witnesses. Pa. SSJI (Crim) 2.04. Regarding the offered testimony and other trial evidence, the finder of fact in making a decision may choose what they value and discount what they find unpersuasive.

The relevant section of the Robbery statute as defined in the Pennsylvania Criminal Code is that below:

> (1) A person is guilty of robbery if, in the course of committing a theft, he: ...
>
> > (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; ... .

18 Pa.C.S. §3701(a)(1)(ii).

Under the Pennsylvania Crimes Code, as applicable to the instant matter, for a robbery to constitute a felony of the first degree, the Commonwealth must show that in the course of committing a theft Defendant Spurell threatened another with or intentionally put another in fear of immediate serious bodily injury. *Id. See also Commonwealth v. Kubis*, 978 A.2d 391, 396 (Pa.Super. 2009) and *Commonwealth v. Thomas*, 376 Pa.Super. 455, 460, 546 A.2d 116, 118-19 (1988) *citing Commonwealth v. Mays*, 248 Pa.Super. 318, 321, 375 A.2d 116, 118 (1977).

The proper focus of the robbery statute in determining the type of bodily harm threatened is a defendant's intent and actions, and whether he reasonably placed a victim in fear of

"immediate serious bodily injury,"[36] not the victim's subjective state of mind. *Commonwealth v. Thomas supra* 376 Pa.Super. at 459-60, 546 A.2d at 118 *citing Commonwealth v. Morton,* 355 Pa.Super. 183, 186, 512 A.2d 1273, 1275 (1986). *See also Commonwealth v. Kubis supra* 978 A.2d at 397-98. Any use or show of force directed to a person while committing a theft brings that act within the scope of the crimes code's robbery provision. *Commonwealth v. Duffey,* 519 Pa. 348, 357-58, 548 A.2d 1178, 1182 (1988) *citing Commonwealth v. Brown,* 506 Pa. 169, 176, 484 A.2d 738, 741 (1984). This force may be actual or constructive. *Id.* Actual force is applied to the body, while constructive force is the use of threatening words and/or gestures and operates on the victim's mindset. *Id.*

In sufficiently proving this mode of robbery, the prosecution may rely on circumstantial evidence, in whole or part, to establish beyond a reasonable doubt all or some of this crime's requisite elements, including a defendant's necessary intent. *Commonwealth v. Davis supra* 861 A.2d at 323 *citing Commonwealth v. Coon supra* 695 A.2d at 797. *See also* Pa.SSJI (Crim) 7.02(A) and 7.02(B). The question is whether the threat intended by a defendant was calculated to instill fear of serious bodily injury. This necessary threatening or intent to put another in fear of immediate serious bodily injury can be shown by a defendant's words, actions, and/or some combination of intimidating verbalizations and menacing activities. Threats to kill a victim support a fact finder concluding a defendant intentionally placed his victim in fear of immediate serious bodily injury. *Commonwealth v. Matthew,* 589 Pa. 487, 494-95, 909 A.2d 1254, 1259 (2006). *See also Commonwealth v. Hall,* 574 Pa. 233, 242, 830 A.2d 537, 542 (2003) (Intent to

---

[36] "Serious bodily injury" as used for purposes of robbery pursuant to Section 3701(a)(1)(ii) of the Pennsylvania Crimes Code is statutorily described as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *See* 18 Pa.C.S. §2301. *See also* Pa. SSJI (Crim) 15.3701(A); *Commonwealth v. Brougher,* 978 A.2d 373, 376-77 (Pa.Super. 2009); and *Commonwealth v. Thomas supra* 376 Pa.Super. at 458, 546 A.2d at 118.

put victim in fear of immediate serious bodily injury can be shown from defendant verbalizing reasons for his actions). The act(s) itself can allow a fact finder to inferentially determine a defendant threatened or intentionally placed his victim in fear of immediate serious bodily injury. *Commonwealth v. Matthew supra* 589 Pa. at 494-95, 909 A.2d at 1259. The brandishing of a deadly weapon can certainly warrant a fact finder concluding an intent to implant fear of immediate serious bodily injury and not just mere bodily injury. *Commonwealth v. Thomas supra* 376 Pa.Super. at 460, 546 A.2d at 118. *See also Commonwealth v. Sirianni,* 286 Pa.Super. 176, 183, 428 A.2d 629, 633 (1981). Evidence of a defendant's aggressive actions that threatened a victim's safety can also justify a jury finding the intent reasonably suggested by the defendant's menacing conduct. *Commonwealth v. Alford,* 880 A.2d 666, 675 (Pa.Super. 2005) *citing Commonwealth v. Hopkins,* 747 A.2d 910, 914-15 (Pa.Super. 2000).

Salient to current considerations, the facts summarized *infra* were established at Defendant Spurell's trial. N.T. 4/16/13.

On the evening of May 12, 2005, three (3) men entered the Family Dollar located in Aston, Pennsylvania. N.T. 4/17/13, pp. 35-36. Shortly after entering the store, two (2) of the robbers approached the cashier to purchase several items. N.T. 4/17/13, pp. 36-37. Maria Evans (hereinafter referred to as "Ms. Evans") was then staffing the register. N.T. 4/17/13, p. 36. At trial, Ms. Evans described the two (2) men, "[t]hey were both black males. One was much taller than the other with a bigger build and facial hair and then the other one was short, also had facial hair, but more to the skin than beardlike." N.T. 4/17/13, p. 36. Ms. Evans at trial identified the larger assailant as Defendant Spurell. N.T. 4/17/13, p. 40.

After Ms. Evans completed the transaction with the shorter of the two (2) assailants, she proceeded to Defendant Spurell's items. N.T. 4/17/13, pp. 36-37. While Ms. Evans was ringing

up the items, the shorter perpetrator walked behind the register's counter, grabbed her shirt, and placed a gun to the back of her head. N.T. 4/17/13, p. 37. During this patently menacing interaction, both the Defendant and his accomplice began yelling at Ms. Evans " ... to open the cash register or they would kill me ... ." N.T. 4/17/13, pp. 37-38.

On Ms. Evans opening the register, Defendant Spurell took to its money while his confederate kept ahold of Ms. Evans. N.T. 4/17/13, p. 38. Throughout this entire exchange, the firearm was still situated in the back of Ms. Evans' neck. N.T. 4/17/13, p. 39. While Ms. Evans was unable to see the firearm that was placed at the back of her head, on being asked at trial as to what she felt she described the firearm as follows, "[m]etal and it was hard and using a good bit of pressure. So just a square, metal, hard thing." N.T. 4/17/13, p. 44.

Subsequent to Defendant Spurell ransacking the cashier's drawer, the two (2) assailants began to scream at Ms. Evans that they wanted access to the store's safe. N.T. 4/17/13, p. 39. Ms. Evans informed the armed perpetrators that the safe was located in basement office prompting the two (2) robbers to drag Ms. Evans to the back of the store towards the basement. N.T. 4/17/13, p. 39.

The two (2) attackers proceeded to drag Ms. Evans down the stairs to the basement office. N.T. 4/17/13, p. 39. Defendant Spurell and his accomplice threw Ms. Evans in a corner of the office, instructing her to not move or they would kill her, while they forced the store's manager to provide them with the money from the safe. N.T. 4/17/13, p. 40. While emptying the safe, Defendant Spurell and his partner continued to yell at the store manager before fleeing. N.T. 4/17/13, p. 41.

The following day Ms. Evans went to the Aston Township Police Station where she gave a statement about the robbery. N.T. 4/17/13, pp. 41-42. When at the police station, the officers

35

provided Ms. Evans a photo array for her review. N.T. 4/17/13, p. 42. *See also* Commonwealth Exhibit C-15 – Photo Array - Maria Evans. On being presented with the photo array, Ms. Evans identified Defendant Spurell as one (1) of the armed robbers. N.T. 4/17/13, pp. 42, 136. *See also* Commonwealth Exhibit C-15 – Photo Array - Maria Evans.

At the time of the robbery, Christiana Covington ("Ms. Covington") was shopping in the Family Dollar store. N.T. 4/17/13, p. 46. Ms. Covington heard a scream followed by the cashier advising an agitated robber that she was unable to open the drawer. N.T. 4/17/13, pp. 48-49.

As Ms. Covington walked to the front of the store, she was confronted by a man who told her "No, don't do it, face down on the f'ing floor now." N.T. 4/17/13, p. 49. On being given such a threat, Ms. Covington froze in place for approximately thirty (30) seconds and on the attacker again ordering her to get down on the floor again he proceeded to lift up his shirt and revealed a silver firearm at his waist. N.T. 4/17/13, pp. 50, 56.

During this interaction, Ms. Covington and the armed assailant were approximately two (2) feet away from each other. N.T. 4/17/13, p. 50. Ms. Covington described this individual as " … [t]all, about 6' 1", maybe 6'2". He's wearing a white shirt, blue jeans shorts, white sneakers. He has on white socks that came up to about his knees. He had a mustache, a beard, he had on a white hat." N.T. 4/17/13, pp. 49, 57. Ms. Covington described this individual's facial hair as a " … goatee or whatever, like when they let them grow really long." N.T. 4/17/13, p. 49. At trial, Ms. Covington identified this person as Defendant Spurell. N.T. 4/17/13, p. 50.

While Ms. Covington was lying face down on the ground, Defendant Spurell instructed her to hand over here cellular phone. N.T. 4/17/13, p. 51. On Ms. Covington refusing his command, the Defendant took her cellular phone from her hip-clip before reaching into her back pocket and removing her wallet. N.T. 4/17/13, p. 51. After the Defendant seized Ms.

36

Covington's cellular phone and wallet, he proceeded to do the same to the other individuals in the store. N.T. 4/17/13, p. 52. Ms. Covington then observed the armed perpetrators, including Defendant Spurell, drag Ms. Evans to the basement. N.T. 4/17/13, p. 52.

Subsequent to the robbery, Ms. Covington also went to the police station where she was shown a photo array. *See* Commonwealth Exhibit C-1 – Photo Array - Christina Covington. On presenting Ms. Covington with the photo array, the officers gave her the following instruction "[t]hey said do you see the gentlemen that you saw in the store, is he in this lineup. They said take your time. If you don't see him, you know, that's fine. If you do, just point him out and let me know." N.T. 4/17/13, p. 55. Ms. Covington immediately identified Defendant Spurell. N.T. 4/17/13, pp. 55, 135. *See also* Commonwealth Exhibit C-1 – Photo Array - Christina Covington.

Ms. Covington on the night of the robbery was accompanied to the Family Dollar store by her friend Melissa Wright ("Ms. Wright"). N.T. 4/17/13, p. 62. Ms. Wright testified that while she was in the store she heard what she thought sounded like crying. N.T. 4/17/13, p. 62. After hearing these noises, Ms. Wright witnessed Ms. Covington run to the front of the store, but soon returned in the custody a black male who told the two (2) to get on the ground. N.T. 4/17/13, p. 62. Ms. Wright described the man as wearing a white shirt, jeans, sneakers, and "kind of tall." N.T. 4/17/13, p. 63. When she was forced to the ground, Ms. Wright was within one (1) foot of the individual. N.T. 4/17/13, p. 63. On the man lifting up his shirt, Ms. Wright saw a gun handle. N.T. 4/17/13, p. 64. Ms. Wright then remained on the ground until after the Defendants had left the store. N.T. 4/17/13, pp. 64-65.

Adrienne Mayo ("Ms. Mayo") was shopping by herself in the Family Dollar on May 12, 2005. N.T. 4/17/13, p. 70. Ms. Mayo heard a commotion in the front of the store that included a male and female voices screaming. N.T. 4/17/13, p. 71. Ms. Mayo was then approached by a

black male who "seemed huge," with a beard and a white shirt. N.T. 4/17/13, p. 73. This individual motioned as though he possessed a firearm and was yelling at Ms. Mayo to get down on the ground. N.T. 4/17/13, pp. 72-73. After Ms. Mayo was on the floor of the store, the armed assailant took her purse. N.T. 4/17/13, p. 74. When situated on the ground Ms. Mayo recalled two (2) armed men and the cashier jumping over her before heading to the back of the store. N.T. 4/17/13, p. 75.

Mr. Robert Calciano ("Mr. Calciano"), the manager of the Family Dollar, *inter alia*, testified at the Defendant's trial as to the video security system that was in place in the store at the time of the robbery. N.T. 4/17/13, pp. 82-83. The security system included four (4) cameras attached to a VCR with a monitor in the office. N.T. 4/17/13, pp. 82-83. The system recorded video, but not audio. N.T. 4/17/13, p. 83. The surveillance video was played for the jury. N.T. 4/17/13, p. 95. *See also* Commonwealth Exhibit C-19 – Surveillance Video of Family Dollar.

On the night of the robbery, Mr. Calciano initially heard Ms. Evans' scream causing him to glance at the security monitoring system where he observed a person standing in the store's front door. N.T. 4/17/13, p. 84. Mr. Calciano also noticed a hand "rifling through the drawer just below the cash register." N.T. 4/17/13, p. 84. Acting under the assumption that the store was being robbed, Mr. Calciano immediately called the police. N.T. 4/17/13, p. 84. While on the phone with the police, Mr. Calciano continued to observe via the video cameras the individual at the door, the hand taking items from the register, and another person approaching the side of the counter. N.T. 4/17/13, pp. 84-85.

Mr. Calciano then saw the armed assailant whose hand had been in the register and the perpetrator who had approached the counter drag Ms. Evans to the back of the store. N.T. 4/17/13, p. 85. The two (2) robbers proceeded down the stairs to the office with Ms. Evans.

N.T. 4/17/13, p. 86. The shorter, skinnier offender, who was holding Ms. Evans, threw her to the floor and told Mr. Calciano to get on the ground. N.T. 4/17/13, p. 87.

Mr. Calciano described the two (2) robbers for the jury as "two African-American males, one was short and skinny. The other one was taller, a little bit, don't want to say fat, but a little bit stockier. Both were wearing blue jeans and white t-shirts." N.T. 4/17/13, p. 86. Mr. Calciano further described the offenders' facial hair, "the taller one had a big bushy beard. The other one did have facial hair, but it was much shorter." N.T. 4/17/13, pp. 87-88. At the time Mr. Calciano observed these men they were roughly fifteen (15) to twenty (20) feet from him. N.T. 4/17/13, pp. 86-87. At trial, Mr. Calciano identified the taller individual as Defendant Spurell. N.T. 4/17/13, pp. 87-88.

When on the ground Mr. Calciano was instructed to open the safe forcing him to crawl across the office floor. N.T. 4/17/13, p. 91. Mr. Calciano after opening the safe heard the two (2) armed assailants rifling around the safe and then footsteps running up the steps out of the basement office. N.T. 4/17/13, pp. 91-92.

Following the robbery, Mr. Calciano inspected the safe and found " ... the nightly deposit was gone as well as all of the petty cash for making change for the cashiers." N.T. 4/17/13, p. 91. The deposit total was approximately three-thousand ($3,000.00) dollars, while the petty cash was somewhere between five hundred ($500.00) to six hundred ($600.00) dollars, made up of small denominations. N.T. 4/17/13, pp. 91-92.

The next morning Mr. Calciano went to the Aston Township Police Station. N.T. 4/17/13, p. 98. After providing the police with a statement, Mr. Calciano was shown a photo array. N.T. 4/17/13, pp. 99-100, 136. *See also* Commonwealth Exhibit C-16 – Photo Array - Robert Calciano. Mr. Calciano testified that the officers " ... asked me to take a look at it and let

39

them know if I recognized anybody by placing an X above the picture or beside it." N.T. 4/17/13, p. 100. Mr. Calciano identified Defendant Spurell and marked his picture with an "X." N.T. 4/17/13, pp. 100, 136. *See also* Commonwealth Exhibit C-16 – Photo Array - Robert Calciano.

On May 12, 2005, Sergeant Jeffrey Brown, Aston Township Police Department, was in a marked patrol vehicle approximately three (3) blocks away from the Family Dollar store when he received a radio call of an armed robbery in progress at that place of business. N.T. 4/17/13, p. 113. Before arriving at the Family Dollar, he received a second radio call informing him that " ... three black males left the store, entered a green Mercury Sable and left out the back parking lot of the shopping center ... ." N.T. 4/17/13, p. 113.

On receiving this second dispatch, Sergeant Brown began his pursuit of the green Mercury Sable. N.T. 4/17/13, pp. 114-15. The sergeant detailed the chase of the automobile, "[w]e continued through Chester Township into Chester City, down 9th Street in Chester City to Holland Avenue, Holland Avenue to the off ramp of 322 or the on ramp of 322 where the vehicle crashed." N.T. 4/17/13, p. 116. The green Mercury Sable crashed into a culvert, " ... a ditch with a pipe going through it that goes under the highway." N.T. 4/17/13, p. 116. Sergeant Brown arrived shortly after the crash and observed an officer fighting with a suspect, identified as Samson McQueen. N.T. 4/17/13, pp. 116-17. At this time a police radio broadcast announced that the Chester City Police had a second male, identified as Anthony Ross, in custody approximately one hundred fifty (150) yards away from the scene of the crash. N.T. 4/17/13, pp. 117-18.

As searching for the third perpetrator, the responding officers discovered in the vicinity of the motor vehicle crash a sewer pipe large enough for a person to crawl through. N.T.

40

4/17/13, p. 118. Out of concern for officer safety, the responding police did not enter the sewer, but requested other investigators to find the other end of the sewer. N.T. 4/17/13, p. 118. On locating the far entrance of the sewer, the police officers discovered a pair of blue shorts, a t-shirt, and a white hat, but did not find the third armed assailant, Defendant Spurell. N.T. 4/17/13, p. 119.

At the time of the motor vehicle pursuit, Detective Chad Osborne, Aston Township Police Department, was in an unmarked vehicle and in plain clothes. N.T. 4/17/13, p. 123. After the automobile crashed, Detective Osborne took part in the discovery of the far entrance to the sewer line and the clothing found at the scene. N.T. 4/17/13, p. 125. Detective Osborne described the clothing as a pair of jean shorts and a white shirt. N.T. 4/17/13, pp. 125-26. On inspecting the pockets of the jean shorts, Detective Osborne found approximately three thousand dollars ($3,000) in United States currency. N.T. 4/17/13, p. 126. The officers also found a wallet during their search of the immediate vicinity of the sewer. N.T. 4/17/13, p. 126. A further investigation of the wallet revealed it belonged to Ms. Covington. N.T. 4/17/13, p. 126.

Following the search of the area surrounding the crash and sewer, police had the automobile towed to the Aston Township Police Station and conducted an inventory search of its contents. N.T. 4/17/13, pp. 127-28. *See also* Commonwealth Exhibit C-14 – Aston Township Police Department Property Sheet. This inventory search of revealed the following: "[A] Sprint Sanyo brand silver cell phone and a black case, two silver men's watches in plastic Family Dollar cases, four pairs of extra large shorts with Family Dollar labels, one New York baseball cap, $90 in cash, one silver and blue Sprint Samsung cell phone, one black Motorola cell phone, one silver Motorola cell phone, a key, a silver ring, $10 in cash, one disposable camera, a steak knife, Family Dollar bag with $100 US currency in coins, a brown corduroy pocketbook, a black

41

purse, a black pocketbook, a Pittsburgh baseball cap, one Raptors baseball cap, a black t-shirt, a bag of crack-cocaine." N.T. 4/17/13, p. 128. *See also* Commonwealth Exhibit C-14 – Aston Township Police Department Property Sheet. The brown corduroy purse was determined to belong to Ms. Mayo, while the black purse was identified as Ms. Evans. N.T. 4/17/13, pp. 128-29.

The Defendant via this assignment of error advances on appeal that the case record recounted above was insufficient as a matter of law to sustain his five (5) Robbery[37] convictions. *See* Statement of Matters Complained, No. 2. Based on the applicable law and those salient facts established at trial, as well as accepting the evidence in the light most favorable to the prosecution, Defendant Spurell's appellate complaint challenging the sufficiency of the evidence related to the five (5) Robbery[38] convictions is meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

Based on the multiple and varied witness identifications, it is doubtless that Defendant Spurell was one (1) of the armed assailants who robbed the employees and patrons of the Family Dollar store on the night in question. The Defendant at trial was identified by three (3) witnesses to have been one (1) of the assailants who committed the robberies at the Family Dollar. N.T. 4/17/13, pp. 40, 50, 87-88. Ms. Evans, Ms. Covington and Mr. Calciano were all certain in their trial identifications that the Defendant committed the robberies. Similarly, the trial descriptions of Defendant Spurell from Ms. Mayo and Wright comported with the detailed accounts advanced by Ms. Evans, Ms. Covington and Mr. Calciano. N.T. 4/17/13, pp. 63, 73. Following the

---

[37] 18 Pa.C.S. §3701.
[38] *Id.*

robberies, Ms. Evans, Ms. Covington, and Mr. Calciano were all separately shown photo arrays at the Aston Township Police Department. N.T. 4/17/13, pp. 41-42, 55, 100, 135-36. On being presented with the photo arrays, all three (3) victims again without hesitation identified the Defendant as the robber. N.T. 4/17/13, pp. 41-42, 55, 100, 135-36.

Testimony was also presented at Defendant Spurell's trial as to the items that were taken and the recovery of those stolen items.

During the course of the five (5) robberies, the Defendant and his fellow assailants took from the various victims numerous items, including purses, wallets, and cellular phones. N.T. 4/17/13, pp. 51, 52, 74, 126, 128. *See also* Commonwealth Exhibit C-14 – Aston Township Police Department Property Sheet. In addition to these personal items being stolen from the victims of the robbery, the money from not only the cashier's drawer, but also the contents of the safe were stolen from Family Dollar. N.T. 4/17/13, pp. 37-39, 91-92, 126, 128. Many of these items were eventually recovered during an inventory search of the fleeing motor vehicle in which the Defendant was a passenger. N.T. 4/17/13, pp. 127-28. *See also* Commonwealth Exhibit C-14 – Aston Township Police Department Property Sheet. Several other stolen items were also discovered with a pair of jean shorts that were found at the end of the sewer that the Defendant used to evade police during their search for him. N.T. 4/17/13, p. 126. Located with the pair of jean shorts was not only Ms. Covington's wallet, but also three thousand dollars ($3,000.00), the same amount as the Family Dollar nightly deposit that was removed from the store's safe. N.T. 4/17/13, pp. 91-92, 126.

Beyond demonstrating that the Defendant was a most active participant in the robberies and that various items were stolen and recovered, the prosecution as well presented via the victims' detailed descriptions of Defendant Spurell's behavior and actions during the course of

43

the robbery for the jury to readily appreciate his threats and intent to place each of them in fear of immediate serious bodily injury.

Throughout the robbery the Defendant and his fellow robbers menaced, threatened and instilled fear of immediate serious bodily injury in the employees and patrons of Family Dollar. *See Commonwealth v. Kubis supra* 978 A.2d at 396 and *Commonwealth v. Thomas supra* 376 Pa.Super. at 460, 546 A.2d at 118-19 *citing Commonwealth v. Mays supra* 248 Pa.Super. at 321, 375 A.2d at 118. *See also Commonwealth v. Duffey supra* 519 Pa. at 357-58, 548 A.2d at 1182 *citing Commonwealth v. Brown supra* 506 Pa. at 176, 484 A.2d at 741. At trial, multiple victims testified that the Defendant was in possession of a firearm, while another testified that the Defendant was waiving his arm around as though he had a firearm. N.T. 4/17/13, pp. 39, 44, 50, 56, 64, 72-73. Ms. Evans testified that on being attacked by the Defendant his co-conspirator grabbed her and pushed a firearm to the back of her head. N.T. 4/17/13, pp. 39-44. *See also Commonwealth v. Thomas supra* 376 Pa.Super. at 460, 546 A.2d at 118 and *Commonwealth v. Sirianni supra* 286 Pa.Super. at 183, 428 A.2d at 633.

In addition to their possessing firearms, her assailants grabbed Ms. Evans and ordered her to " ... open the cash register or they would kill me." N.T. 4/17/13, pp. 37-38, 40. *See also Commonwealth v. Matthew supra* 589 Pa. at 494-95, 909 A.2d at 1259 and *Commonwealth v. Hall supra* 574 Pa. at 242, 830 A.2d at 542. Following their ransacking of the register, Defendant Spurell and his co-conspirator menacingly demanded Ms. Evans take them to the store's safe. N.T. 4/17/13, p. 39. Ms. Evans was then forcefully grabbed, pulled, and drug across the store, including over at least one (1) customer, who had at this time been threateningly demanded to lie on the ground. N.T. 4/17/13, pp. 39-40. On reaching the door to the office, Ms. Evans was pushed down the stairs while under the continued physical menace of two (2) of the

perpetrators, including the Defendant. N.T. 4/17/13, pp. 39-40. After being forced into the basement office, Ms. Evans was thrown into a corner and was told " ... not to move or they would kill me." N.T. 4/17/13, pp. 39-40. *See also Commonwealth v. Alford supra* 880 A.2d at 675 *citing Commonwealth v. Hopkins supra* 747 A.2d at 914-15.

Beyond the attacks committed against Ms. Evans, three (3) customers of the Family Dollar (Ms. Covington, Ms. Wright, and Ms. Mayo) all suffered similar treatment from Defendant Spurell and his co-conspirators throughout the course of the robbery. The Defendant confronted the three (3) women and demanded each of them to lie face down on the ground while intimidatingly displaying and/or referencing a firearm. N.T. 4/17/13, pp. 49-50, 56, 62, 64, 72-74. *See also Commonwealth v. Kubis supra* 978 A.2d at 396; *Commonwealth v. Thomas supra* 376 Pa.Super. at 460, 546 A.2d at 118-19 *citing Commonwealth v. Mays supra* 248 Pa.Super. at 321, 375 A.2d at 118; *Commonwealth v. Sirianni supra* 286 Pa.Super. at 183, 428 A.2d at 633; and *Commonwealth v. Duffey supra* 519 Pa. at 357-58, 548 A.2d at 1182 *citing Commonwealth v. Brown supra* 506 Pa. at 176, 484 A.2d at 741. During each of these interactions, the Defendant stood merely a few feet from the victims. N.T. 4/17/13, pp. 50, 63. Once on the ground, the Defendant forcibly removed their cellular phones, wallets, and purses from their persons. N.T. 4/17/13, pp. 51, 52, 74.

The store manager, Mr. Calciano, was as well subject to the Defendant's use of force and threats. While he was in the basement office, Mr. Calciano was alerted to the robbery by Ms. Evans' screams from the front of the store. N.T. 4/17/13, p. 84. The Family Dollar's security cameras allowed him to observe the Defendants attack his employee and drag her throughout the store and down a flight of stairs. N.T. 4/17/13, pp. 84-87. *See also Commonwealth v. Alford supra* 880 A.2d at 675 *citing Commonwealth v. Hopkins supra* 747 A.2d at 914-15. Once the

45

Defendant and his accomplice reached the basement office, they ordered Mr. Calciano to get down on the ground, similar to the customers they past encountered and robbed. N.T. 4/17/13, pp. 87, 91. After Mr. Calciano was on the ground, the Defendant and his co-conspirator forced him to open the safe and then stole its contents, including over three thousand dollars ($3,000.00). N.T. 4/17/13, pp. 91-92, 126. *See also Commonwealth v. Matthew supra* 589 Pa. at 494-95, 909 A.2d at 1259 and *Commonwealth v. Hall supra* 574 Pa. at 242, 830 A.2d at 542.

In reviewing Defendant Spurell's sufficiency challenges to his five (5) robbery convictions the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. If the court finds " ... the record contains support for the convictions," the decision must remain as the jury concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213. The jury in reaching these guilty verdicts was afforded at trial ample evidence in legal support of the same. As there was sufficient evidence for the jury to find beyond a reasonable doubt that Defendant Spurell committed these five (5) robberies, this court will not and is not permitted under well settled principles of law to replace the decision reached by the jury with its own conclusion otherwise. Resultantly, the Defendant's appellate complaint that his five (5) robbery convictions cannot be sustained is meritless.

In addition to Defendant Spurell's contention that sufficient evidence at trial as a matter of law did not support his five (5) robbery convictions, the Defendant as well challenges the

legal sufficiency of the evidence relating to his Criminal Conspiracy to commit Robbery[39] conviction.

Salient to this issue advanced by Defendant Spurell on appeal, Criminal Conspiracy[40] is defined per the Pennsylvania Criminal Code as follows:

> (a) Definition of conspiracy.-- A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ... ; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime ... .

18 Pa.C.S. §903(a)(1)(2).

"A conspiracy is an agreement to commit an unlawful act; the agreement can be proven by the relation, conduct, or circumstances of the parties." *Commonwealth v. Baskerville*, 452 Pa.Super. 82, 93, 681 A.2d 195, 201 (1996) *citing Commonwealth v. Glover*, 399 Pa.Super. 610, 616, 582 A.2d 1111, 1114 (1990) *citing Commonwealth v. Jackson supra* 506 Pa. at 473, 485 A.2d at 1104. An overt act is " ... an act done in furtherance of the object of the conspiracy." *Commonwealth v. Prep*, 186 Pa.Super. 442, 451, 142 A.2d 460, 465 (1958) *quoting Commonwealth v. Mezick*, 147 Pa.Super. 410, 413, 24 A.2d 762, 764 (1942). An overt act must only be shown to have been "committed by a co-conspirator" as it is not required to legally sustain a conspiracy conviction that each of the conspirators undertake actions to effectuate their criminal understanding. *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super. 2000) *quoting Commonwealth v. Johnson*, 719 A.2d 778, 784 (Pa.Super. 1998) (*en banc*), *appeal*

---

[39] 18 Pa.C.S. §903.
[40] *Id.*

*denied*, 559 Pa. 689, 739 A.2d 1056 (1999) *citing Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176–1177 (1994). Commission of the object crime by any conspirator satisfies the overt act necessary to the Commonwealth proving as a matter of law a conspiracy. *Commonwealth v. Sanchez*, 82 A.3d 943, 973 (Pa. 2013) *citing Commonwealth v. Weimer*, 602 Pa. 33, 39, 977 A.2d 1103, 1106 (2009). Once it is established that the defendant entered into a criminal agreement " ... that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Murphy*, 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004) *citing Commonwealth v. Wayne*, 553 Pa. 614, 630, 720 A.2d 456, 463-64 (1998). *See also Commonwealth v. Ruiz*, 819 A.2d 92, 98 (Pa.Super. 2003) *quoting Commonwealth v. Lambert*, 795 A.2d 1010, 1016-17 (Pa.Super. 2002) *quoting Commonwealth v. Galindes*, 786 A.2d 1004, 1011 (Pa.Super. 2001); *Commonwealth v. Baskerville supra* 452 Pa.Super. at 93, 681 A.2d at 201 *citing Commonwealth v. Robinson*, 351 Pa.Super. 309, 316, 505 A.2d 997, 1001 (1986); and *Commonwealth v. Bachert*, 271 Pa.Super. 72, 77, 412 A.2d 580, 583 (1979).

Circumstantial evidence is sufficient to prove evidence of a conspiracy. *Commonwealth v. Maxwell*, 354 Pa.Super. 555, 561, 512 A.2d 679, 682 (1986) *citing Commonwealth v. Carter*, 272 Pa.Super. 411, 414, 416 A.2d 523, 524 (1979). The prosecution is under no obligation to prove a conspiracy through " ... direct proof or an explicit or formal agreement." *Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001 *citing Commonwealth v. Fontana*, 265 Pa.Super. 387, 395, 401 A.2d 1361, 1365 (1979). "Indeed, direct proof of an explicit or formal agreement to commit a crime can seldom, if ever, be supplied and it need not be for 'it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence.'" *Commonwealth v. Robinson supra* 351

Pa.Super. at 316, 505 A.2d at 1001 *quoting Commonwealth v. Roux*, 465 Pa. 482, 488, 350 A.2d 867, 870 (1976). "The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Ruiz supra* 819 A.2d at 97 *citing Commonwealth v. Johnson supra* 719 A.2d at 784-85.

The Superior Court has found the following factors instructive in reviewing an appellate complaint regarding whether as a matter of law a conspiracy conviction was supported by sufficient evidence:

> (1)[A]n association between alleged conspirators; (2) [K]nowledge of the commission of the crime; (3) [P]resence at the scene of the crime; and (4) [I]n some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Ruiz supra* 819 A.2d at 97 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016 *quoting Commonwealth v. Olds*, 322 Pa.Super. 442, 447-48, 469 A.2d 1072, 1075 (1983).

Applying those factors enumerated by the *Ruiz* court to the trial's evidence viewed most favorably to the prosecution, Defendant Spurell and his co-defendants clearly conspired to perpetrate the armed robbery of the employees and patrons of the Family Dollar store. *Commonwealth v. Ruiz supra* 819 A.2d at 97 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016 *quoting Commonwealth v. Olds supra* 322 Pa.Super. at 447-48, 469 A.2d at 1075. (The necessary "web of evidence" to establishing a conspiracy can be found on an association of the conspirators, knowledge of the crime's perpetration, and presence at the crime scene when viewed in the material, contextual circumstances.) *See also Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364

*citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

The Defendants through their actions clearly demonstrated that they had entered a conspiracy to commit robbery. *Commonwealth v. Ruiz supra* 819 A.2d at 97 *citing Commonwealth v. Johnson supra* 719 A.2d at 784-85. All three (3) confederates arrived at the store together. N.T. 4/17/13, pp. 35-36. On entering, two (2) of the armed robbers accosted the numerous victims, while the third remained a lookout. After taking control of the store, Defendant Spurell and his one (1) criminal cohort dragged Ms. Evans down a flight of stairs into the Family Dollar's basement office before ransacking the contents of the store's safe while the Defendant along the way menacingly robbed patrons through the displaying and/or referencing of a firearm. N.T. 4/17/13, pp. 39-40, 50, 56, 64, 72-73, 91-92. *See also Commonwealth v. Sanchez supra* 82 A.3d at 973 *citing Commonwealth v. Weimer supra* 602 Pa. at 39, 977 A.2d at 1106. After perpetrating the robberies, the men fled the store together via a common automobile and were chased by pursuing police until the driver of the motor vehicle lost control and the car crashed. N.T. 4/17/13, pp. 112-18. *See also Commonwealth v. Ruiz supra* 819 A.2d at 97 *citing Commonwealth v. Johnson supra* 719 A.2d at 784-85. At the scene of the crash, two (2) of the armed assailants were apprehended while the third, Defendant Spurell, was able to escape. N.T. 4/17/13, pp. 116-18. The items that were discovered at the scene of the motor vehicle crash and the drain pipe corresponded to those items that had just been stolen from the robbery victims. N.T. 4/17/13, pp. 118-19, 125-29. *See also* Commonwealth Exhibit C-14 – Aston Township Police Department Property Sheet.

Viewing his Criminal Conspiracy to commit Robbery[41] conviction in the light most favorable to the Commonwealth it is patently evident that the prosecution demonstrated beyond a reasonable doubt that Defendant Spurell joined and was an active participant in a conspiracy to rob the Family Dollar store and its then present patrons. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

The jury on being presented with the relevant evidence was " ... free to resolve any doubts regarding a defendant's guilt." *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549, *appeal denied*, 575 Pa. 691, 835 A.2d 709. The jury in its role as the " ... sole judge[ ] of the credibility and weight of all testimony," is certainly free to reject or accept, in whole or part, the testimony of all witnesses. Pa. SSJI (Crim) 2.04. The Defendant's present error assignment challenging the sufficiency of the evidence relating to the Defendant's Criminal Conspiracy to commit Robbery[42] conviction is meritless.

In addition to the Defendant's assertions that the prosecution did not marshal legally sufficient evidence during the course of trial related to the five (5) Robbery[43] and one (1) Criminal Conspiracy to commit Robbery[44] convictions, he as well challenges the weight of the evidence regarding these same convictions. *See* Statement of Matters Complained, No. 2.

---

[41] 18 Pa.C.S. §903(3701).
[42] *Id.*
[43] 18 Pa.C.S. §3701.
[44] 18 Pa.C.S. §903(3701).

For a weight of the evidence claim to be properly raised on appeal, such a claim " ... must [have been] preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super. 2011). Evidentiary weight claims to be reviewed on appeal first " ... shall be raised with the trial judge in a motion for a new trial." Pa.R.Crim.P. 607(A). "Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim." *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa.Super. 2012) *citing Commonwealth v. Bond*, 604 Pa. 1, 16-17, 985 A.2d 810, 820 (2009). Defendant Spurell through counsel having timely lodged such a post-sentence motion, this claim for the pending appellate review has been preserved. *See* Defendant's Post-Sentence Motion dated June 27, 2015. *See also Commonwealth v. Lofton supra* 57 A.3d at 1273 *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest supra* 18 A.3d at 1239.

A challenge to the weight of the evidence " ... concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa.Super. 2005) *quoting Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa.Super. 2003), *appeal denied*, 574 Pa. 773, 833 A.2d 143 (2003). Furthermore, " ... the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Id.* 866 A.2d at 1101-02 (Emphasis omitted) *quoting Commonwealth v. Sullivan supra* 820 A.2d at 805-06. Deference is yet extended to the jury by recognizing in their exclusive fact-finding function that the jurors are " ... to adjudge the credibility of witnesses and to determine whether their testimony, if believed, establishes the elements of the offenses charged." *Commonwealth v. Stays*, 70 A.3d 1256, 1267 (Pa.Super. 2013).

A weight of the evidence claim is committed to the trial court's discretion subject to appellate review of whether such discretion was properly exercised as is further detailed below:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Brown*, 71 A.3d 1009, 1013 (Pa.Super. 2013). *See also Commonwealth v. Karns*, 50 A.3d 158, 165 (Pa.Super. 2012); *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa.Super. 2004) *quoting Davis v. Mullen*, 565 Pa. 386, 390, 773 A.2d 764, 766 (2001) *citing Catalano v. Bujak*, 537 Pa. 155, 161, 642 A.2d 448, 450 (1994); *Commonwealth v. Dupre supra* 866 A.2d at 1101-02; *Commonwealth v. Sullivan supra* 820 A.2d at 805-06; *Commonwealth v. Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) *quoting Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003); and *Commonwealth v. Widmer*, 560 Pa. 308, 321, 744 A.2d 745, 753 (2000) *citing Commonwealth v. Brown*, 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994).

A trial court judge's decision regarding a weight of the evidence challenge will also be afforded deference "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Commonwealth v. Widmer supra* 560 Pa. at 321, 744 A.2d at 753 *citing Commonwealth v. Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). An appellate court will not substitute its decision for that reached by the trial court, "[i]nstead, this [Superior] Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance." *Commonwealth v Stays supra* 70 A.3d at 1268 *quoting*

53

*Commonwealth v. West*, 937 A.2d 516, 521 (Pa.Super. 2007) *citing Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007).

The Pennsylvania Supreme Court has described this discretion of the trial court and its abuse per that below:

> ... imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993).

Only if it can be found that the trial judge committed an abuse of discretion will a weight of the evidence error assignment be found successful. *Commonwealth v. Brown supra* 71 A.3d at 1013. The abuse of discretion required in such a determination is one "[w]hen 'the figure of Justice totters on her pedestal,' or when 'the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson supra* 860 A.2d at 581 *quoting Nudelman v. Gilbride*, 436 Pa.Super. 44, 51, 647 A.2d 233, 237 (1994) *quoting Lupi v. Keenan*, 396 Pa. 6, 15-16, 151 A.2d 447, 452-53 (1959) (Musmanno, J., dissenting).

Based on the applicable law and the above detailed facts established at trial, Defendant Spurell's present error assignment that the weight of the evidence did not support the jury's

decision to find him guilty of the five (5) Robbery[45] charges and the single count of Criminal Conspiracy to commit Robbery[46] is meritless.

Having presided over the Defendant's trial, listened attentively to the entirety of the evidentiary presentation, and observed the testimonial demeanor of the various prosecution witnesses, as well as heard the respective arguments of counsel, this court's conscience is not in the least "shocked" by the jury concluding beyond a reasonable doubt that Defendant Spurell, along with his criminal confederates, pursuant to such a conspiracy actively perpetrated the armed robbery of the Family Dollar store and its patrons.

While appreciating the advocacy of defense counsel's attempts to demonstrate that the identifications and testimony of those victims that recognized Defendant Spurell were lacking, as well as counsel's argument that a firearm was never observed by the victims, this court is in no manner troubled by the jury's determination that the Defendant committed these five (5) robberies and that he had entered and participated in a conspiracy to commit these robberies.

On the announcing of the jury's verdict that it found Defendant Spurell guilty of five (5) counts of Robbery[47] and one (1) count of Criminal Conspiracy,[48] this court most certainly did not temporarily lose its breath, almost fall from the bench, and/or suffer even a twinge of judicial conscience. *Commonwealth v. Davidson supra* 860 A.2d at 581 *quoting Nudelman v. Gilbride supra* 436 Pa.Super. at 51, 647 A.2d at 237 *quoting Lupi v. Keenan supra* 396 Pa. at 15-16, 151 A.2d at 452-53.

The record at bar is devoid of any evidence of " ... partiality, prejudice, bias or ill will." *Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M.*

---

[45] 18 Pa.C.S. §3701.
[46] 18 Pa.C.S. §903(3701).
[47] 18 Pa.C.S. §3701.
[48] 18 Pa.C.S. §903(3701).

*Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. The instant record likewise lacks any evidence that the law was overridden or misapplied at any point of the trial. *Id.* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. There is no evidence that the matter at bar was tried on any basis other than dispassionately by the trial court.

The jury was " ... free to resolve any doubts regarding [Defendant Spurell's] guilt." *Id.* *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. The Commonwealth's trial evidence as the jury found with good cause credible amply and rationally supported their collective determination that Defendant Spurell's guilt to the now attacked convictions was proven beyond a reasonable doubt. The Defendant's challenge to the weight of the evidence on the instant record simply lacks merit.

***V. The trial court abused its discretion and/or committed an error of law by failing to timely rule on Defendant's Post Sentence Motion alleging a violation of his Rule 600 speedy trial rights, and therefore denying the motion as a matter of law without reaching a decision on the merits, where the underlying incident took place in May of 2005 and charges were not brought against him until July 17, 2012, notwithstanding that Defendant was incarcerated and under county supervision, with his whereabouts known by the Commonwealth, from 2008 through 2011.***

Through his final appellate complaint[49] the Defendant advances that this court committed an abuse of discretion and/or error of law in failing to past decide his post-sentence motion relevant to Pa.R.Crim.P. 600 on the merits. *See* Statement of Matters Complained, No. 3. Although for the reasons discussed *infra* the court neither decided Defendant Spurell's counseled post-sentence Motion to Challenge ... Dismissal Pursuant to the Commonwealth's Failure to Comply with Rule 600, nor did the Delaware County Office of Judicial Support timely enter an

---

[49] For a discussion concerning the court's denial of Defendant Spurell's Rule 600 dismissal claim, see Section III of this opinion.

order denying the same via operation of law, the court is candidly unable to discern the relief the Defendant now on appeal seeks by this error assignment, recognizing that stemming from his previous collateral petition's filing, the case record has been corrected and his sentencing judgment made final allowing the instant direct appeal to proceed.

The Defendant, on or about May 16, 2014, filed a *pro se* Petition for Post-Conviction Collateral Relief ... . *See* Defendant's PCRA Petition. Consistent with Defendant Spurell's request for counsel's assistance, Henry DiBenedetto Forrest, Esquire was appointed stewardship of this collateral litigation. *See* Order dated May 16, 2014. After granting his PCRA lawyer's extension request, a counseled, Amended Petition for Post-Conviction Hearing Relief under the PCRA (Petition for Reinstatement of Direct Appeal Rights) was lodged on or about March 12, 2015. *See* Amended PCRA Petition. Responding to such an order, the Commonwealth on June 11, 2015, filed its answer to the counseled, collateral petition. *See* Commonwealth's Answer and Orders dated March 12, 2015 and June 11, 2015. By order of June 26, 2015, a resulting evidentiary hearing was listed. *See* Order dated June 26, 2015.

At the PCRA hearing of August 6, 2015, it was realized that while the Administrative Office of the Pennsylvania Courts Delaware County Computerized Criminal System noted Defendant Spurell's trial attorney had timely lodged of record on or about June 27, 2013, post-sentence motion, this filing was not even at that time part of the court file maintained by the Judicial Support Office of Delaware County and had not been forwarded and/or otherwise made known to this judge. N.T. 8/6/15, pp. 4-9. *See also* Defendant's Post-Sentence Motion dated June 27, 2013. It was relatedly acknowledged of record that although the Delaware County Judicial Support Office had electronically docketed the trial lawyer's post-sentence motion, it

57

had not even as of then, pursuant to Pa.R.Crim.P. 720(B)(3)(a)(c) caused to be entered of record an order denying by operation of law this post-sentence filing. N.T. 8/6/15, pp. 4-9.

Now appreciating the systematic breakdown described above, the prosecutor and the Defendant's collateral attorney recognized of record that trial counsel and Defendant Spurell were not provided any notice of the direct appeal period beginning to run and relatedly that absent the entry of an order denying via operation of law the post-sentence motion (June 27, 2013), the thirty (30) day time parameter for the filing of a direct appeal with the Superior Court from the sentencing judgment at bar had yet commenced. N.T. 8/6/15, pp. 4-9. *See also* Pa.R.Crim.P. 720(B)(4) and Pa.R.A.P. 108(a)(1)(d)(1). The Defendant's PCRA lawyer and the Commonwealth's attorney resultantly agreed, as did this court, that it would compel the Judicial Support Office of Delaware County to then enter an order denying by operation of law the past, timely lodged post-sentence motions (June 27, 2013) which on such an order's docketing would make final Defendant Spurell's judgment of sentence and begin the thirty (30) day period for the filing of a direct appeal. N.T. 8/6/15, pp. 6-9, 11-2. *See also* Pa.R.A.P. 903. Counsel similarly concurred that the pending collateral pleading was to be as premature dismissed. N.T. 8/6/15, pp. 7-8.

Via separate orders of August 7, 2015, this court dismissed Defendant Spurell's then pending PCRA action and the Delaware County Judicial Support Office finally denied by operation of law the Defendant's post-sentence filing. *See* Orders dated August 7, 2015. Thereafter, the presently pending appeal was lodged on August 11, 2015, through Defendant Spurell's lawyer. *See* Notice of Appeal dated August 11, 2015.

Subsequent to the August 6, 2015, collateral hearing, the court's clerk combed through the Judicial Support Office and located a secondary or "dummy" case file which contained the

58

Defendant's counseled, post-sentence motion and various other original documents. All these materials were then made part of the Judicial Support Office's official court file. *See* Orders dated August 7, 2015.

Although believing an abuse of discretion requires the court, unlike the circumstances at bar, to have some awareness of the need to make a pending decision and yet take no action, it was this court's ultimate responsibility to decide in this case all outstanding issues raised by any filed pleadings. Related to Defendant Spurell's post-sentence motions, it did not render a decision. However, the salient Rule of Criminal Procedure provides a failsafe for undecided post-sentence pleadings per its directive that "[i]f the judge fails to decide the motion within 120 days, ... the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 720(B)(3)(a).

The same office that did not bring the post-sentence motion to his court's attention and neglected to include the pleading in the official case file it maintains also did not do that mandated by Pa.R.Crim.P. 720(B)(3)(a) and cause to be entered of record an order denying via operation of law the Defendant's post-sentence motion until the filing of his collateral lawyer's amended PCRA petition prompted the discovery of this systematic breakdown and the instant record's correction.

The case record confusion created by the Judicial Support Office of Delaware County was certainly not helped by Defendant Spurell's post-verdict – pre-sentencing *pro se* filing of an appeal to the Superior Court and/or his trial attorney lodging post-verdict yet before sentencing imposition a Motion to Challenge the Verdict Against the Weight of the Evidence and Dismissal Pursuant to Commonwealth's Failure to Comply with Rule 600. *See Pro Se* Appeal Notice, Superior Court No. 1359 EDA 2013, and Defendant's Motion dated April 25, 2013. There is as well no evidence at bar that defense counsel, subsequent to the post-sentence motion not being

59

decided either by this court or on the entry of an operation of law denial order, made inquiries of the Delaware County Judicial Support Office and/or the court about the post-sentence pleading's status. N.T. 8/6/15.

In light of the foregoing, this court just does not understand the relief Defendant Spurell now seeks per this appellate complaint. While the systematic breakdown recounted above should not have happened, once the same became known remedial actions were taken by this court with agreement of the prosecutor and the Defendant's collateral attorney, which resulted in Defendant Spurell's direct appeal rights being restored and currently pursued. N.T. 8/6/15, pp. 4-9. *See also* Orders dated August 7, 2015.

This court certainly does not believe that the varied failures of the judicial system combining to create such circumstances should somehow work to the Commonwealth's patent detriment with the setting aside of Defendant Spurell's convictions, particularly on the realization that not a single error assignment presently advanced calls into question the fundamental fairness of the trial process from which these convictions result.

While the Delaware County Judicial Support Office foremost is to shoulder the blame for the Defendant's post-sentence motions not being more timely addressed, as must this court and, to a lesser extent, trial counsel, as well as perhaps Defendant Spurell, it is uncontroverted that the Commonwealth played no part whatsoever in what transpired other than to recognize the issue and readily agree to its rightful resolution in a manner that permitted the Defendant to litigate the pending direct appeal.

In light of the foregoing, the Defendant is not entitled through this final appellate complaint to any relief beyond that which he was already rightfully afforded resulting from his

Post Conviction Relief Act litigation, the case record's correction allowing him to pursue his right of direct appeal.

## VI. Conclusion

For all the aforementioned reasons, Defendant Spurell's convictions should be affirmed, his mandatory minimum sentences set aside and the case for purposes of resentencing remanded to this court.

**BY THE COURT:**



_____
**Kevin F. Kelly**        **J.**

FILED 2015 DEC 15 AM 9: 44 OFFICE OF JUDICIAL SUPPORT DELAWARE CO.